S99A1098. McWILLIAMS v. THE STATE.
(521 SE2d 824)

SEARS, Justice.

The appellant, Marvin McWilliams, appeals from his conviction of the felony murder of his wife, Jacqueline McWilliams.[1] On appeal, McWilliams raises only one issue, contending that the trial court violated the rule against hearsay by permitting the victim's sister to testify regarding a conversation she had with Jacqueline McWilliams about two weeks before the murder. We conclude that this contention has merit and requires that we reverse McWilliams's conviction.

On April 22, 1997, the body of Jacqueline McWilliams was discovered in a creek in Richmond County, Georgia. Investigator Ken Rogers of the Richmond County Sheriff's Office noticed that tire tracks indicated that a vehicle had backed up to the creek at the point where the body was located. After Investigator Rogers learned that the victim was married to Marvin McWilliams, Rogers went to McWilliams's home, and left a card on the door with a note requesting that McWilliams contact him. On April 23, McWilliams came to the Sheriff's Department for an interview. McWilliams stated that he came home from work about 12:20 a.m. on April 20, 1997, but that on the way home, he had stopped at a police substation to ask if his wife could be evicted from their apartment. McWilliams stated that he was told that she could not be. He then went home, and when he arrived, his wife was not there. He stated, however, that she arrived shortly thereafter, and that the two began to argue. He added that "she just started again," "just a cussing." He also stated that she knocked over a coffee table and a coatrack, and kicked a closet door. According to McWilliams, he "was just trying to stay out of her way," and she was "hollering and screaming and cussing and carrying on." McWilliams stated that Jacqueline started hitting him in the chest, and that he then choked her with both hands until she passed out and slid to the floor. He added that he then wrapped her body in a

---

[1] The crime occurred on April 20, 1997, and McWilliams was indicted on June 10, 1997. Following a jury trial, McWilliams was found guilty on July 14, 1997. On July 18, 1997, the trial court sentenced McWilliams to life in prison. On July 24, 1997, McWilliams filed a motion for new trial, and on October 14, 1997, the court reporter certified the trial transcript. On April 5, 1999, the trial court denied McWilliams's motion for new trial, and on April 6, McWilliams filed a notice of appeal. The appeal was docketed in this Court on April 23, 1999, and was submitted for decision on briefs on June 14, 1999.

blanket, put her in the back of his station wagon, drove to the creek where her body was found, and dumped her into the creek.

The state's medical examiner testified that the victim had a laceration on the right side of her face, a cut on her neck, a bruised left eye, a bruised left temple, and a fracture of the "horseshoe" or hyoid bone in her neck. He added that Jacqueline died as a result of strangulation caused by compression of the neck.

The victim's sister, Jessica Holmes, testified that she last spoke with Jacqueline on April 6, 1997. She added that she remembered the date because it was a couple of days after her daughter's birthday. Jessica testified that Jacqueline wished her daughter a happy birthday, and that it seemed as if Jacqueline wanted to cry. Jessica asked her what was wrong, and Jacqueline responded that "the beatings are getting worse. I said, Jackie, what do you mean the beatings are getting worse? And she said, Marvin's beating me; the beatings are getting worse." Jessica added that that was the last time she spoke with her sister.

1. Having examined the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found McWilliams guilty of felony murder beyond a reasonable doubt.[2]

2. In his sole enumeration of error, McWilliams contends that the trial court erred in admitting hearsay testimony under the necessity exception to the rule against hearsay when it permitted the victim's sister to testify that the victim told her that Marvin was beating her and that the beatings were getting worse.[3] We agree.

"Under the necessity exception to the hearsay rule, hearsay statements are admissible when the evidence is 'necessary' and when there are 'particular guarantees of trustworthiness.' "[4] To satisfy the first requirement, the proponent of the evidence must show that the "declarant is deceased or unavailable, that the statement is relevant to a material fact, and that the statement is more probative on that material fact than other evidence that may be procured and offered."[5] Here, even assuming the "necessary" prong was satisfied, we conclude that the "trustworthiness" prong was not. In this regard, this Court has held that "uncontradicted statements made to one in whom the deceased declarant placed great confidence and to whom she turned for help with her problems are admissible under the necessity exception."[6] In the present case, however, there is simply no

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] Contrary to the State's contention, we conclude that McWilliams properly preserved the issue for appeal.

[4] *Chapel v. State*, 270 Ga. 151, 155 (510 SE2d 802) (1998); *Roper v. State*, 263 Ga. 201, 202 (429 SE2d 668) (1993).

[5] *Chapel*, 270 Ga. at 155.

[6] *Ward v. State*, 271 Ga. 648 (520 SE2d 205) (1999).

evidence that the victim and her sister had such a relationship. In fact, the victim's sister's testimony that the last time she spoke with her sister was the conversation in question, which was about two weeks before the victim's death, could be viewed as supporting the conclusion that the sisters did not share the type of special relationship on which we have relied to find that the "trustworthiness" prong is satisfied.[7] Finding insufficient factors to support the reliability of the victim's statement, we conclude that the trial court erred in permitting the victim's sister to testify regarding the statements made to her by the victim.

Finally, because McWilliams contended that the death of his wife was voluntary manslaughter, because there was evidence to support the trial court's charge on voluntary manslaughter, and because the hearsay statements in question could have led the jury to discount the defendant's statement to the police that his wife was being aggressive to him on the night of her death, we cannot conclude that the trial court's error in admitting the hearsay testimony was harmless.

*Judgment reversed. All the Justices concur, except Hunstein, J., who concurs in the judgment only.*

DECIDED OCTOBER 18, 1999.

*Peter D. Johnson, for appellant.*
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Daniel G. Ashburn, Assistant Attorney General, for appellee.*

---

[7] See *Carr v. State*, 267 Ga. 701, 706 (482 SE2d 314) (1997), in which we held that there were not sufficient indicia of reliability to support the admission into evidence of statements made by the victim to her sister.