## S01A0435. TODD v. THE STATE.
### (549 SE2d 116)

HINES, Justice.

Reginald Todd was convicted of malice murder in connection with the death of his wife, Loretta Todd. For the reasons that follow, we affirm.[1]

---

[10] *Johnson*, 238 Ga. at 61.

[11] *Johnson*, 238 Ga. at 61, quoting Traynor at 50-51.

[1] Loretta Todd was killed on July 23, 1997. On January 13, 1998, a Fulton County grand jury indicted Reginald Todd on one count of malice murder, one count of felony murder, and one count of aggravated assault. He was tried before a jury December 14-16, 1998 and found guilty on all charges. On December 16, 1998 the trial court sentenced Todd to life in prison for malice murder; the aggravated assault count merged with the felony murder, which was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). On January 12, 1999, Todd filed a motion for new trial, which was amended on February 25, 2000, and denied on June 6, 2000. Todd filed a notice of appeal on June 27, 2000, his appeal was docketed in this Court on December 6, 2000, and submitted for decision on January 30, 2001.

Evidence showed that Todd called police to his home. When the first officer arrived, Todd stated: "I made a mistake." He then led the officer to the bedroom where Loretta's body lay on the bed, with gunshot wounds to the head. Todd told another officer that he had thrown the pistol outside. He gave a statement to the police in which he said that he and the victim had argued, and she began to gather articles of clothing and stated that she was leaving Todd and their marriage. Todd threw the victim on the bed, got on top of her, and asked whether she was trying to "hurt me or kill me or something?" The victim said no, that if Todd did not kill her, this would be the last time he saw her. He took the pistol from under the pillow and shot into the floor. The victim said that Todd did not scare her and that their marriage was over. Todd then "snapped" and shot her.

Physical evidence showed that the victim was shot four times, with the pistol that Todd had thrown from the house, while the muzzle was pressed against her forehead.

1. The evidence was sufficient to authorize the jury to find Todd guilty of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Whether the evidence showed only voluntary manslaughter resulting from a serious provocation was a question for the jury. *Roseborough v. State*, 270 Ga. 143, 145 (508 SE2d 656) (1998).

2. Todd contends that the trial court should have declared a mistrial because in the State's opening statement it said that certain prejudicial evidence would be introduced against Todd, and then the State, in bad faith, failed to introduce any evidence on that subject. First, Todd made no motion for mistrial at the close of the State's case and this issue is not preserved for appellate review. See *Williams v. State*, 269 Ga. 827, 829 (5) (504 SE2d 441) (1998); *Thaxton v. State*, 260 Ga. 141, 143 (5) (390 SE2d 841) (1990). Second, the State's behavior in this case does not pose the same problem this Court addressed in *Alexander v. State*, 270 Ga. 346, 348-351 (2) (509 SE2d 56) (1998).[2] There the State asserted it would show that the defendant and his companions were members of a gang, were involved in an argument with members of a rival gang, and that those facts were the genesis of the crime being tried, but the State made no attempt to introduce evidence of such gang involvement.

Here, in its opening statement, the State told the jury that the victim's sister would testify that the victim "told her that she was getting tired, that she was frustrated, that she was tired of the

---

[2] Todd asserts that because the decision in *Alexander* was issued only ten days before trial in his case began, he should be excused from any requirement that he move for a mistrial. However, we note that the defendant in *Alexander* did so move when faced with what Todd contends are similar circumstances.

excuses the defendant would give her constantly about not having a job, that she would have to meet him at the bank sometimes to get money from [sic] him to pay bills. She was tired. She's frustrated." When questioning the sister on direct, the State asked: "During the conversation with your sister, did you ask her anything about money?" The sister replied affirmatively, and the State asked: "What question did you ask your sister about money?" The sister responded: "I asked her how her finances were." The State asked: "And what did she say?" The sister responded: "She said that she was frustrated and tired." Thus, unlike what occurred in *Alexander*, the State did indeed attempt to introduce the promised evidence, and there is no circumstance from which bad faith can be inferred. Compare *Alexander*, supra at 350. In fact, the State essentially elicited all that to which it referred in its opening statement, and there is no error. See *Bellamy v. State*, 272 Ga. 157, 160 (5) (527 SE2d 867) (2000).

3. Todd also asserts that the testimony of the victim's sister set forth in Division 2, supra, was improperly admitted because the State did not make the necessary showings to introduce hearsay testimony under the necessity exception of OCGA § 24-3-1 (b). Such hearsay must not only be necessary, but must be accompanied by particular guarantees of trustworthiness in order to be admissible under the necessity exception. *Chapel v. State*, 270 Ga. 151, 154-156 (4) (510 SE2d 802) (1998). Todd urges that such guarantees were not present, but they were.

Whether guarantees of trustworthiness exist is determined by the totality of the circumstances, and the trial court exercises its discretion in resolving the issue. *McCulley v. State*, 273 Ga. 40, 41-42 (2) (a) (537 SE2d 340) (2000). "Uncontradicted statements made to one in whom the deceased declarant placed great confidence and to whom she turned for help with her problems are admissible under the necessity exception." *Ward v. State*, 271 Ga. 648, 650 (2) (520 SE2d 205) (1999). Here the evidence showed that the two sisters visited each other's homes, and that the victim's sister would pick the victim up on the weekends to do washing at the sister's home. Topics of conversation between the sisters included the victim's relationship with Todd and the financial circumstances of the victim and Todd. A few days before the victim was killed, the sisters spoke on the telephone for an hour and a half. Under the totality of the circumstances, the trial court did not abuse its discretion in determining that the sisters had the sort of relationship which held guarantees of trustworthiness such that the victim's statements to her sister concerning her finances were admissible under the necessity exception to hearsay. Compare *McWilliams v. State*, 271 Ga. 655, 656-657 (2) (521 SE2d 824) (1999); *Carr v. State*, 267 Ga. 701, 706 (482 SE2d 314) (1997).

Additionally, if admitting the challenged testimony was error, it

was harmless. Although Todd cites *McWilliams*, supra, for the proposition that he was harmed because the challenged evidence might lead the jury to disbelieve the defendant's claim of voluntary manslaughter, the reliance on *McWilliams* is misplaced. In that case, the hearsay testimony which this Court determined should have been excluded was that the defendant had a history of beating the victim, and that those beatings were increasing in severity. Such hearsay went directly to the issue of whether the victim was physically aggressive toward McWilliams and whether he was guilty of voluntary manslaughter, as he claimed, or whether he was guilty of malice murder, as the State claimed and the jury found. Here, testimony concerning the Todds' financial condition does not so harm Todd's claim of voluntary manslaughter. The only connection between the couple's finances and the killing was the possible motive that when the victim threatened to leave, Todd realized that the "breadwinner" would be leaving, and he could not allow that. However, at trial, Todd testified that the killing occurred substantially as he told the police it had in his statement: a "nitpicking" argument about the television escalated; the victim said she was leaving Todd and he got on top of her on the bed; she said, "[i]f you don't kill me, this will be the last time that you see me"; Todd took the pistol from under the pillow and shot into the floor; and the victim stated that Todd did not scare her, and repeated that if he did not kill her, he would not see her again. According to his testimony, the next thing Todd recalled, her head was bleeding, and the pistol was in his hand. Thus, given Todd's trial testimony, it is highly probable that the hearsay testimony concerning the couple's finances did not contribute to the verdict, and admission of the evidence was harmless. See *Brinson v. State*, 268 Ga. 227, 229 (3) (486 SE2d 830) (1997).

4. As to voluntary manslaughter as a potential lesser offense, the trial court instructed the jury that:

> [P]rovocation by words alone will in no case justify such excitement of passion sufficient to free the accused from a crime of murder or reduce the offense to manslaughter when the killing is done solely in resentment of such provoking words. Words accompanied by menaces, though the menaces do not amount to an actual assault, may in some instances be sufficient provocation to excite a sudden violent and irresistible passion in a reasonable person. And if a person acts from such passion and not from malice or any spirit of revenge, then such would constitute voluntary manslaughter. In all cases the motive is for determination by you the jury. Merely that a killing is done in passion is not sufficient

to make the offense voluntary manslaughter. The existence of the passion must be justified.

Todd reserved objections to the jury charges and now argues that this is an incorrect statement of law, relying on *Banks v. State*, 184 Ga. App. 504 (362 SE2d 227) (1987). In *Banks*, the defendant was found guilty of voluntary manslaughter after learning that the victim was beating the defendant's daughter. Todd argues that the defendant in *Banks,* therefore, did not suffer provocation by any action of the victim directed toward the defendant, but by words in learning of the beating, and that consequently the instruction's reference to "by words alone" is no longer the law. However, the *Banks* opinion does not support his argument. That opinion states only that the defendant "learned" that the victim was beating the defendant's daughter; it does not state that he learned this "by words alone." Id. at 504. Further, the other opinions that Todd cites for the proposition that "provocation by words alone" is no longer the law of this State make clear that there is no change in the law concerning "words alone" and note that it is words *together* with adulterous conduct that can support a finding of voluntary manslaughter. See *Strickland v. State*, 257 Ga. 230, 231 (2) (357 SE2d 85) (1987); *Brooks v. State*, 249 Ga. 583, 586 (292 SE2d 694) (1982). The language concerning "provocation by words alone" given in the jury instruction is correct. See *Mack v. State*, 272 Ga. 415, 417-418 (2) (529 SE2d 132) (2000).

5. After Todd's testimony, someone in the courtroom audience said, presumably to Todd: "You want to cry now? You want to cry now? You want to cry?" Todd requested a mistrial, which the court denied. The court instructed the jury, among other things, that it was not to allow any outbursts to have any effect on its deliberations. Todd took exception to the curative instruction, contended that the curative instruction was insufficient, and renewed his motion for a mistrial. The court again denied the motion.

Measures to be taken as a result of demonstrations and outbursts which occur during the course of a trial are matters within the trial court's discretion unless a new trial is necessary to insure a fair trial. Where the trial court fails to act to stop a disturbance, or fails to instruct the jury to disregard it, and the demonstration will prevent the defendant from receiving a fair trial, the court must grant a new trial. [Cits.]

*Byrd v. State*, 262 Ga. 426-427 (1) (420 SE2d 748) (1992). In these circumstances, the court did not abuse its discretion in denying the mistrial. See *Davis v. State*, 272 Ga. 327, 329 (3) (528 SE2d 800) (2000); *Lowe v. State*, 267 Ga. 410 (3) (478 SE2d 762) (1996); *Sheppard v.*

*State*, 235 Ga. 89, 91 (2) (218 SE2d 830) (1975). And it is unlikely that a single outburst prejudiced Todd's entire case. *Sheppard*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 16, 2001.

*Wayne S. Melnick, Steven E. Phillips*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, C. Michael Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ruth M. Bebko, Assistant Attorney General*, for appellee.