A01A0982. HERRING v. THE STATE.
(555 SE2d 233)

BLACKBURN, Chief Judge.

Following a jury trial, Gerald Wayne Herring appeals his convictions for aggravated assault and rape, arguing that (1) the State's evidence was insufficient to identify him as the perpetrator who assaulted and raped the victim and (2) the trial court erred by allowing the State's investigator to testify to certain hearsay statements made by Herring's wife. For the reasons set forth below, we affirm.

1. Herring argues that the evidence fails to support the jury verdict because the State did not present evidence sufficient to identify him as the perpetrator of the crimes charged. We disagree.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Herring] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Ryals v. State;*[1] see *Jackson v. Virginia.*[2]

Viewing the evidence in this light, the record shows that on June 9, 1999, the victim, a 64-year-old woman, answered a knock at the door to her home in a public housing project at 1:30 a.m. to find a man with a stocking over his head pointing a handgun at her face. The man forced his way into the victim's home at gunpoint and raped her. During the attack, the perpetrator choked the victim and repeatedly threatened to shoot her. The victim tried to fight her assailant but was unsuccessful. As a result of the attack, the victim suffered a number of tears to her vaginal area.

---

[1] *Ryals v. State,* 238 Ga. App. 578 (519 SE2d 505) (1999).
[2] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

After her attacker fled, the victim got up, locked the door, and went to the bathroom to wash up. After lying down on the bed for some time, the victim called her daughter (at approximately 6:15 a.m.) and informed her of the attack. The victim's daughter called the police.

The police arrived at the victim's home and discovered her disoriented and sitting in a chair in her living room. There was blood in the bathroom and in the hallway leading to the living room, as well as on the living room floor, the daybed, and on the chair in which the victim was sitting. The victim described the attack to the police and described the perpetrator as a black man, wearing a stocking over his head and weighing between 250 and 300 pounds. The victim also indicated that the attacker wore blue work pants. The victim was unable to describe the man's face because of the stocking.

The victim was taken to the emergency room at Grady General Hospital, where she was examined. The examining physician identified the victim as having a second degree vaginal tear, consistent with sexual assault. A rape kit was prepared and sent to the Georgia Bureau of Investigation (GBI) Crime Laboratory for analysis.

Later that day, acting on information gathered during the investigation,[3] Investigator Wandell Asbell of the Cairo Police Department and a number of other law enforcement officers went to Herring's house, which is located across the street from the victim's home. In Herring's presence, his wife stated that he had come home during the early morning hours with what appeared to be bloodstains on his clothes. The officers obtained permission from Herring's wife to search the residence. Mrs. Herring showed the officers the clothes that her husband was wearing that morning and turned over stained underwear and navy blue work pants to the officers.

Analysis of the slides taken during the emergency room examination of the victim revealed the presence of sperm. The GBI matched the DNA from this sperm to the DNA from a blood sample obtained from Herring. Investigator Asbell arrested Herring upon receiving news from the GBI Crime Laboratory of the DNA match. Herring was later indicted and convicted by a jury of aggravated assault and rape.

At trial, Herring did not testify or present witnesses in his own behalf. Instead, Herring attacked the State's evidence, arguing as he does now that no rational jury could find that he was the perpetrator based upon the evidence presented as to the identity of the attacker.

---

[3] Investigator Asbell testified that he went to Herring's house on the day of the attack to follow up on information that he received from Corporal Rebecca Baudree of the Cairo Police Department and Investigator Scott Newberry with the Grady County Sheriff's Department that Herring came home that morning with blood on his clothing.

Herring's argument is without merit.

The jury could reasonably have determined that Herring was the attacker based upon the evidence presented by the State. Gina Barton, a forensic biologist with the GBI Crime Laboratory, testified at trial as an expert in the area of forensic DNA testing and analysis. Barton conducted a DNA analysis using the swab samples from the rape kit obtained at the emergency room and blood samples obtained from Herring. Barton testified that the DNA from spermatozoa found on the swabs matched Herring's DNA. Barton further testified that the probability of selecting an unrelated individual from Herring's racial population who had a genetic profile matching the semen taken from the victim was one in ten million.

Herring argues that the DNA match was incomplete because the State failed to match every characteristic of his DNA to that of the sperm swabbed from the victim. Herring presented no expert testimony. On cross-examination, Herring attacked Barton's conclusions, citing her inability to match all characteristics of the DNA. Barton explained that there are 14 areas in DNA that are compared to determine whether there is a match. Here, Barton testified that she matched the characteristics from 11 areas to Herring's DNA. She could not obtain results on three areas and explained that such failure did not mean that those areas did not match, only that no results were obtained. Barton explained that her failure to match all 14 areas did not affect her conclusion that the DNA from the swabs and from Herring's blood matched. Herring's objection to the DNA evidence does not affect its admissibility, but rather its weight. On appeal of a criminal conviction this Court does not weigh the evidence or determine the credibility of witnesses and will not disturb the jury's determination thereof. *Woodford v. State.*[4]

In addition to the evidence that Herring's DNA matched a sperm sample swabbed from the victim's body the day of the attack, the State seized underwear and blue work pants from Herring's home that matched the description given by the victim and that contained reddish-orange stains that appeared to be blood. Moreover, Herring's wife told police that he came home during the early morning hours the day of the attack wearing the clothes she gave police. Two police officers testified that they observed the reddish-orange stains on the pants and underwear, just as Herring's wife described. Although the stains were not analyzed by the GBI Crime Laboratory, testimony concerning the clothes as well as Herring's appearance and conduct on the morning of June 9, 1999, constitutes circumstantial evidence of Herring's guilt. Investigator Asbell testified that, in his experi-

---

[4] *Woodford v. State*, 240 Ga. App. 875, 876 (525 SE2d 408) (1999).

ence, the GBI does not test all evidence because of limited resources. In fact, there are no scientists in the regional lab in Moultrie, which was used in this case as a collection facility. Here, the other evidence from Herring and the rape kit was forwarded to the GBI facility in Decatur for testing. After tests on that evidence revealed a DNA match, Investigator Asbell immediately obtained warrants and arrested Herring. The GBI did not then test the pants and underwear.

A careful review of the entire record in this case reveals that there was evidence from which a rational trier of fact could determine that Herring was the attacker and find him guilty beyond a reasonable doubt of all the offenses of which he was convicted. Compare *Bryant v. State*;[5] *Hardegree v. State*.[6] We find the evidence sufficient to support the verdict under the standard set forth in *Jackson v. Virginia*, supra.

2. Herring next claims that the trial court erred by allowing Investigator Asbell to testify to Mrs. Herring's out-of-court statement that her husband came home during the early morning hours of June 9, 1999, wearing what appeared to be bloodstained clothing. Herring argues that the statement is hearsay and its admission constitutes reversible error.

Hearsay is evidence "which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." OCGA § 24-3-1 (a). "Testimony is considered hearsay . . . if the witness is testifying to another party's statement in order to prove or demonstrate the truth of the matter asserted in that statement." (Citations and punctuation omitted.) *In re Burton*.[7] Here, Investigator Asbell testified as to Mrs. Herring's statement in order to prove the truth of the matter asserted, i.e., her husband's whereabouts and appearance on the morning of the rape. Investigator Asbell's testimony contained hearsay; it derived its value partially from the veracity of Mrs. Herring. See OCGA § 24-3-1 (a). Therefore, such testimony can be admissible only if it meets a hearsay exception.

OCGA § 24-3-1 (b) provides that "[h]earsay evidence is admitted . . . in specified cases from necessity." The State offered the hearsay testimony under this necessity exception. There are three prerequisites for admission of hearsay because of necessity: (1) necessity, (2) particularized guarantees of trustworthiness, and (3) the evidence must be relevant to a material fact and more probative on that mate-

---

[5] *Bryant v. State*, 268 Ga. 616-617 (1) (491 SE2d 320) (1997).
[6] *Hardegree v. State*, 230 Ga. App. 111, 112 (2) (495 SE2d 347) (1998).
[7] *In re Burton*, 271 Ga. 491, 494 (3) (521 SE2d 568) (1999).

rial fact than other evidence that may be procured or offered. See *Holmes v. State*.[8]

The first prerequisite is met since the statement in question was made by Mrs. Herring, who invoked the spousal privilege and was therefore unavailable to testify. See OCGA § 24-9-23 (spousal privilege); *Quijano v. State*[9] (assertion of spousal privilege met necessity requirement); *Higgs v. State*[10] (same). Accordingly, her statement is admissible against her husband if it demonstrated sufficient trustworthiness and is more probative than other evidence that could have been offered on the same issue.

Whether a proponent of a hearsay statement can show a guarantee of trustworthiness is based upon a consideration of the totality of the circumstances surrounding the making of the statement. *Chapel v. State*.[11] In the case at bar, Mrs. Herring made her statement to police during an official rape investigation, bolstering the reliability of the statement. See *Quijano*, supra at 185. In addition, because a relatively short period of time had elapsed between the commission of the crime and the police visit to Herring's apartment (less than 24 hours), it is unlikely that Mrs. Herring spoke based upon a faulty recollection of the events of the morning. Moreover, there is no evidence that Mrs. Herring was under duress, spoke out of fear, or possessed the motive to fabricate a story to incriminate her husband. Furthermore, Mrs. Herring never recanted her statement or sought to change it. Finally, Mrs. Herring's statement was corroborated by other evidence. Two police officers confirmed that the clothing that Mrs. Herring described was indeed stained reddish-orange. The trial court properly found that there were sufficient guarantees of trustworthiness in Mrs. Herring's statement.

Under the third prerequisite to the necessity exception, the statement must be more probative on a material fact than other evidence that may be procured or offered. *Holmes*, supra at 138-139; *Chapel*, supra at 155. Mrs. Herring's statement was relevant to her husband's conduct and appearance on the morning of the rape and more probative on this issue than other evidence that the State could have offered. Herring contests this point and argues that the State cannot claim necessity because the State failed to introduce the clothing with the alleged bloodstains. However, the clothes themselves could not prove that Herring was wearing them when his wife saw him come home during the early morning hours on the day of the rape. Mrs. Herring's statement constituted the only evidence on this point.

---

[8] *Holmes v. State*, 271 Ga. 138-139 (2) (516 SE2d 61) (1999).
[9] *Quijano v. State*, 271 Ga. 181, 184 (4) (516 SE2d 81) (1999).
[10] *Higgs v. State*, 256 Ga. 606, 608 (4) (351 SE2d 448) (1987).
[11] *Chapel v. State*, 270 Ga. 151, 155 (4) (510 SE2d 802) (1998).

We conclude that the statement satisfied the requirements for admission under the necessity exception to the hearsay rule. For this reason, the trial court did not err by allowing the admission of Investigator Asbell's testimony. Herring's second enumeration of error fails.[12]

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 12, 2001.

*Billy M. Grantham*, for appellant.
*J. Brown Moseley, District Attorney, Ronald R. Parker, Assistant District Attorney*, for appellee.

---

[12] Because we conclude that the statement is admissible under the necessity exception to the rule against hearsay, we do not address the State's claim that the statement was admissible as a tacit admission because it was made in the presence of the defendant and under circumstances requiring a response. OCGA § 24-3-36.