S02A1173. MYERS v. THE STATE.
(572 SE2d 606)

BENHAM, Justice.

Thomas Griffin died on the porch of his Seminole County home as a result of a shotgun wound to his chest. One of his neighbors, appellant Walter Thomas Myers, was convicted of the malice murder of Mr. Griffin and possession of a firearm during the commission of a felony. Appellant was sentenced to life imprisonment and a consecutive five-year sentence. He now appeals the judgment of conviction.[1]

---

[1] The victim was killed on January 17, 1999, and a warrant for appellant's arrest was issued on January 19. The grand jury returned a true bill of indictment charging appellant with murder on April 12, 1999, and appellant was tried before a jury on August 30-September 1, 1999. The jury returned its guilty verdicts on September 1, and the trial court

1. The State presented evidence that, shortly before dawn on January 17, 1999, duck hunters heard a shotgun fired, a pause, and then three shots fired in quick succession from a gun different than the first. Later that day, a neighbor found Mr. Griffin's body at his home. A shotgun blast had been fired into the victim's screened-in porch from a position close to the porch, and the victim had fired three shots from his shotgun before he collapsed. Law enforcement officers investigating the homicide were called to appellant's nearby house when a neighbor reported that appellant was bleeding heavily from a gunshot wound and needed medical attention. Appellant's right-hand pinky finger had been shot off, and another finger was partially missing. In addition, appellant had shotgun-pellet injuries to his right thigh. When asked how he had sustained his injuries, appellant told the officers they knew because they had been "down there." A shotgun with buckshot damage and a large amount of blood on it was removed from appellant's home and was found to be jammed by an expended steel shell casing. The following day, after the hospitalized appellant was advised of his constitutional rights, he told the officers the victim had invited him to fish from the victim's dock; appellant had approached the victim's home in the pre-dawn hours with his shotgun and his fishing pole; the victim had shot him while appellant was on the screened-in porch; and appellant had fired back, striking the victim. A week later, appellant, having been released from the hospital and then jailed on the murder charge, was again advised of his rights and told investigators that the victim had fired three shots at him and that he had then shot the victim while straddling the threshold of the porch's screen door.

Several witnesses testified that appellant and the victim did not socialize with one another and that the victim went out of his way to avoid appellant. In addition to the testimony concerning the general nature of the relationship between appellant and the victim, the victim's daughter testified that her father and appellant held differing views on a road-widening project, and a friend of the victim testified that the victim had told him about a physical confrontation between appellant and the victim at the victim's place of employment. In addition, each of three witnesses testified the victim had told him/her that appellant had called the victim and informed him that appellant could see the victim sitting on his porch through the scope of appellant's rifle and could shoot him.

imposed sentence on the same day. Appellant's trial counsel filed a motion for new trial on October 1, 1999, and appellate counsel filed an amended motion on October 24, 2001. Senior Judge John Crosby, sitting by designation, denied the amended motion for new trial on January 30, 2002, and appellant filed a timely notice of appeal on March 1, 2002. The appeal was docketed in this Court on April 19, 2002, and submitted for decision on the briefs.

The evidence presented was sufficient to authorize a rational trier of fact to conclude that appellant was guilty beyond a reasonable doubt of malice murder and possession of a firearm during the commission of a felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred when it used the "necessity" exception to the rule against the admission of hearsay to admit testimony about purported prior difficulties between appellant and the victim. After holding a pre-trial hearing at which none of the hearsay witnesses testified, the trial court announced it would allow witnesses to testify "about any threats from the defendant to the victim that were communicated to [the witnesses] by the victim." Appellant takes issue with the admission at trial of three "types" of hearsay evidence: (1) the testimony of several witnesses who were allowed to testify that the victim had described appellant to the witness as "trouble," "dangerous," or "liable to be trouble"; (2) the testimony of two witnesses were permitted to testify about derogatory comments appellant made to the witnesses about the victim, and (3) the three witnesses who testified that the victim had told the witness of receiving a telephone call from appellant in which appellant told the victim that he could see, using the scope of his rifle, the victim sitting on his porch and could "shoot him out of his chair" from where he was sitting at any time.

Testimony concerning prior threats, quarrels, or assaults by the defendant against the victim is admissible to show the defendant's motive, intent, and bent of mind in committing the crime against the victim for which the defendant is being tried. *Wall v. State*, 269 Ga. 506 (2) (500 SE2d 904) (1998). However, hearsay testimony that the *victim* believed the defendant was "dangerous" or was "trouble," especially in the absence of evidence that the defendant was aware of the victim's opinion of the defendant, is not evidence of a prior difficulty that tends to establish the *defendant's* motive, bent of mind, or intent in killing the victim. Accordingly, the trial court erred when it allowed witnesses to testify about what the victim thought of the defendant.

In contrast, witnesses' testimony concerning appellant's statements to them demonstrating ill will and animosity toward the victim were admissible as original evidence and were not hearsay. See *Azizi v. State*, 270 Ga. 709 (3) (512 SE2d 622) (1999); *Hodges v. State*, 265 Ga. 870 (4) (463 SE2d 16) (1995). Accordingly, the trial court did not err when it permitted two witnesses to testify about the derogatory comments made to them by the defendant about the victim.

A defendant's threat to do physical harm to a victim constitutes a prior difficulty and is evidence tending to establish the defendant's motive, bent of mind, or intent in killing the victim. *Wall v. State*,

supra, 269 Ga. at 509. Evidence that appellant called the victim and told him he could see him sitting on his porch through the scope of his rifle and could shoot him is a prior difficulty in that it is a verbal act threatening physical harm. However, when, as here, the testimony concerning prior difficulties is hearsay, it is not admissible unless it meets an exception to the rule against the admission of hearsay. *Slakman v. State*, 272 Ga. 662 (3) (533 SE2d 383) (2000). For hearsay to be admitted under the "necessity" exception, the proponent must establish that the testimony is necessary and that there are particular guarantees of trustworthiness connected to the declarant's statements. Id.; *Roper v. State*, 263 Ga. 201 (2) (429 SE2d 668) (1993). Whether testimony was accompanied by particular guarantees of trustworthiness is a matter for the trial court's discretion, and the trial court's decision will not be disturbed on appeal unless there is an abuse of discretion. *Dolensek v. State*, 274 Ga. 678 (2) (558 SE2d 713) (2002). The trial court does not abuse its discretion when it uses the necessity exception to admit hearsay testimony that relates an uncontradicted statement made by the unavailable witness to one in whom the declarant placed great confidence and to whom the declarant turned for help with problems. *Ward v. State*, 271 Ga. 648 (2) (520 SE2d 205) (1999). In the case at bar, the hearsay witnesses were a neighbor of the victim who described himself as "real good friends" with the victim; the victim's next-door neighbor for 12 years who said she knew the victim well; and the victim's daughter, who testified she visited the victim during the summer and Christmas holidays. There was no evidence that the next-door neighbor and the victim's daughter had a relationship with the victim where the victim placed great confidence in the witness and turned to the witness for help with personal problems. The existence of a familial relationship is not enough. See *McWilliams v. State*, 271 Ga. 655 (2) (521 SE2d 824) (1999); *Carr v. State*, 267 Ga. 701 (3) (482 SE2d 314) (1997). Compare *Ward v. State*, supra, 271 Ga. 648 (2), where the witness testified to having a 20-year friendship and a trusting relationship with the victim during which she saw the victim 2-3 times a week, with the victim seeking the witness out to talk about personal problems. The lack of such a relationship or other particular guarantees of trustworthiness makes the admission of their hearsay testimony erroneous. *Slakman v. State*, supra, 272 Ga. 662 (3); *McWilliams v. State*, supra, 271 Ga. 655 (2); *Azizi v. State*, supra, 270 Ga. 709 (2) (b).

The erroneous admission of hearsay testimony is harmless where it is cumulative of legally admissible evidence of the same fact, where it does not touch on the central issue of the case, or it could not have contributed to the verdict in light of eyewitness testimony regarding the crime. *Lee v. State*, 270 Ga. 626 (2) (513 SE2d 225) (1999). See also *White v. State*, 273 Ga. 787 (4) (546 SE2d 514) (2001).

In the case at bar, the erroneous admission of the hearsay is harmless error because the testimony is cumulative of the testimony of the third hearsay witness, who described his relationship with the victim as that of "real good friends" who "had gotten real close" in the 30 months preceding the victim's death, and who had spent time together visiting in one another's homes. Since his relationship with the victim provided the particular guarantees of trustworthiness necessary to admit his hearsay testimony, it was properly admitted. But see *Mallory v. State*, 261 Ga. 625 (2) (409 SE2d 839) (1991).

3. Appellant next finds error in the trial court's admission of evidence regarding appellant's statements to investigating officers while in the hospital and while in jail. Appellant contends the statements were not knowingly and voluntarily made because the officers knew appellant was on pain medication during his hospitalization and they should have known he was on pain medication when they interviewed him at the jail after his release from the hospital. At the hearing held pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), one of the officers who was present for both interviews with appellant testified appellant was informed of his *Miranda* rights before each interview, verbally acknowledged he understood each right, and executed a form acknowledging he understood his rights and expressing his willingness to speak to the investigators about Mr. Griffin's death. The officer described appellant as alert, responsive, and aware of the identity of the officers, and described appellant's answers as logical and coherent. The trial court found the statements were freely and voluntarily made by appellant. "The fact that a defendant is in pain or taking pain medication does not, in and of itself, render any statement made involuntary. [Cits.] Nor does the circumstance of a defendant being hospitalized and undergoing treatment require such a finding." *Larry v. State*, 266 Ga. 284 (2) (466 SE2d 850) (1996). The evidence supports the trial court's determination in favor of admissibility. Id.

4. Lastly, appellant maintains he did not receive the effective assistance of trial counsel. To prevail on a claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Mobley v. State*, 271 Ga. 577 (523 SE2d 9) (1999). A strong presumption exists that counsel's conduct falls within the broad range of professional conduct (id.), and the trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous. *Potter v. State*, 273 Ga. 325, 326 (540 SE2d 184) (2001). In his amended motion for new trial,

appellant contended trial counsel was ineffective because he purportedly did not cross-examine witnesses sufficiently; he did not voir dire the State's expert witnesses; he failed to present at the *Jackson-Denno* hearing medical evidence establishing the level of appellant's medication when he gave incriminating statements to police; he did not consult blood-spatter and sound experts; and he did not permit appellant to testify.

At the hearing on the motion for new trial, it was established that trial counsel had handled over 500 criminal matters, including a number of murder and death penalty cases, and was now a member of the judiciary. Trial counsel testified he met with his client between 20 and 30 times; he chose to present the testimony of a local expert in lieu of cross-examining the GBI's out-of-town expert witness; he purposefully did not cross-examine witnesses who had not provided damaging testimony; and he saw no need for the experts appellate counsel maintained should have been hired. Trial counsel acknowledged that the decision whether to testify belongs to the client, and stated he advised appellant not to testify because appellant's version of events had been presented to the jury in the form of his statements to police and counsel feared appellant would not bear up well under the assistant district attorney's cross-examination. Trial counsel stated it was appellant who made the decision not to testify and appellant told him that he felt comfortable because some of his friends were members of the jury.

Deciding what witnesses to call and whether and how to conduct cross-examination are strategic and tactical decisions within the exclusive province of the attorney after consultation with the client. *Van Alstine v. State*, 263 Ga. 1, 3 (426 SE2d 360) (1993). With regard to the alleged evidentiary omission at the *Jackson-Denno* hearing, we conclude that the failure to establish appellant's level of medication does not constitute ineffective assistance of counsel since the taking of pain medication does not, in and of itself, render a statement involuntary. See Division 3, supra. Lastly, trial counsel's testimony that appellant made the decision not to testify after consulting with trial counsel supports the trial court's determination that counsel was not ineffective. *Potter v. State*, supra, 273 Ga. at 328.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 12, 2002.

*Robert M. Thomas*, for appellant.
*Charles M. Ferguson, District Attorney, Thurbert E. Baker, Attor-*

*ney General, Jennifer S. Gill, Assistant Attorney General*, for appellee.