A04A1060. MULLINS v. THE STATE.
(605 SE2d 913)

BARNES, Judge.

Michael Mullins appeals from his convictions for voluntary manslaughter and aggravated assault and raises the general grounds. Mullins also contends the trial court erred by: (1) admitting hearsay evidence of his prior difficulties with the decedent; (2) admitting his statement to police; (3) failing to grant a mistrial after the State elicited bad character evidence; (4) charging the jury on voluntary

---

manslaughter; and (5) failing to charge the jury on grave suspicion of guilt. For reasons that follow, we affirm.

1. " 'On appeal, the evidence must be viewed in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. (Cit.)' [Cit.]" *Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995). Viewed in this light, the record shows that Mullins fired a handgun four times at a car occupied by four young men, killing one of them, Demetrius Whitfield. The three survivors testified that the shooting was unprovoked and that they had just left the home of Whitfield's girlfriend, who lived on Keyes Street, when the shooting occurred.

The record further shows that there was history between Mullins and the victim, as well as the victim's brother, Eric Whitfield. Three witnesses testified that the victim told them he had been robbed by Mullins two or three weeks before the fatal shooting. The victim's girlfriend testified that he told her before his death that Mullins robbed him of a lot of money and jewelry on a trip to Atlanta and forced him to walk home. The victim's brother testified that the victim told him before his death that Mullins pulled a gun on him on a trip to Atlanta, robbed him of money and jewelry, and forced him to walk home. The victim's cousin also testified that before his death the victim told him that Mullins pulled a gun on him during a trip to Atlanta, stole his money and some jewelry, and made him walk home.

On the day of the shooting, the victim's brother drove down Keyes Street and exchanged curses with Mullins, who was near the front porch of a friend's home. At the end of this exchange, Mullins threatened, "I'm fixing to come and blow up your whole house." The victim lived in the same home as his brother. The brother left the area, but later returned and fired a gun at Mullins, who ducked and was unharmed.

Mullins did not call the police to report the drive-by shooting. Instead, he remained at his friend's home and later sat on the front porch steps with a gun beside him. When the victim drove down the street in a different car, without his brother, Mullins fired four shots at the car. According to Mullins, he fired because the victim slammed on his brakes, and he saw the victim reach for an "elongated" object that Mullins thought was a gun. Two of the occupants of the car testified that the victim suddenly slammed on the brakes because another car pulled out in front of him, causing all of them to lean forward. Mullins said he thought the victim was going to get him, especially since his brother had already shot at him earlier that day,

and that he was shocked they were coming for him again. After shooting at the car, Mullins left the scene and threw the gun into a lake.

We find this evidence sufficient to support Mullins' voluntary manslaughter and aggravated assault convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Mullins contends the trial court should not have admitted hearsay evidence of the victim's prior difficulties with him under the necessity exception to the hearsay rule. See OCGA § 24-3-1 (b).

Mullins contends the hearsay exception did not apply because there were insufficient guarantees of trustworthiness based on minor inconsistencies in the three witnesses' account of the robbery, and the fact that one of the witnesses and the victim were convicted felons. He also argues generally that evidence of the robbery should not have been admitted because there was an insufficient showing to introduce evidence of this prior difficulty.

> [E]vidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted. . . . [S]uch evidence [is] admissible because it demonstrate[s] the defendant's motive, intent or bent of mind toward the victim and thereby establishe[s] a logical, probative connection between the crime charged and the prior difficulty.

(Citations omitted.) *Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998). Hearsay testimony concerning prior difficulties may be admitted only when it meets an exception to the rule against the admission of hearsay. *Myers v. State*, 275 Ga. 709, 712 (2) (572 SE2d 606) (2002).

> For hearsay to be admitted under the "necessity" exception, the proponent must establish that the testimony is necessary and that there are particular guarantees of trustworthiness connected to the declarant's statements. . . . The trial court does not abuse its discretion when it uses the necessity exception to admit hearsay testimony that relates an uncontradicted statement made by the unavailable witness to one in whom the declarant placed great confidence and to whom

the declarant turned for help with problems.

(Citations omitted.) Id. "Whether testimony was accompanied by particular guarantees of trustworthiness is a matter for the trial court's discretion, and the trial court's decision will not be disturbed on appeal unless there is an abuse of discretion." (Citation omitted.) Id.

We find no abuse of discretion by the trial court. The witnesses, the victim's girlfriend, brother, and cousin, were all ones to whom the victim was close and would place great confidence. The victim told each of the witnesses about the robbery separately at a time when there was no motive to fabricate the story, and never sought to change or recant his statement about the robbery. *Herring v. State*, 252 Ga. App. 4, 7 (2) (555 SE2d 233) (2001). Under these circumstances, the victim's felony conviction would not render his statements so untrustworthy as to be inadmissible. Furthermore, the witness's previous felony conviction has no bearing on the admissibility of the decedent's statement. Cf. *Swain v. C & S Bank of Albany*, 258 Ga. 547, 550 (1) (372 SE2d 423) (1988) (circumstances indicating witness has an interest in the case "should merely go to the credibility of the witness, not to the admissibility of the declarant's statement").

Moreover, the trial court found that there was sufficient evidence that the robbery occurred, that it was relevant to show Mullins' motive in shooting the victim, and that the robbery explained why Mullins retaliated against the victim for his brother's retaliation for the robbery earlier in the day. Thus, the trial court did not abuse its discretion by allowing the State to present evidence of the prior difficulties between Mullins and the victim.

3. Mullins asserts the trial court should not have admitted into evidence the videotaped statement he gave to police in the early morning hours following the shooting. According to Mullins, he was in custody at the time he gave the statement and he was not given the warnings required by *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). The record shows that Mullins voluntarily appeared at the police station to turn himself in because he had heard that there was a warrant for his arrest for murder. The officer interviewing Mullins told him that he was not presently charged with murder. Mullins then told the officer that he would fully cooperate until he was charged with something, and that once he was charged he would "restrain from saying anything." At the time of the interview, Mullins was a suspect, there was a BOLO ("be on the lookout") for him and the police would not have allowed him to leave the station after entering it. He was never told, however, that he was under

arrest, and he voluntarily appeared at the station of his own accord. There was no warrant for Mullins' arrest at the time he gave his statement.

> For *Miranda* to apply[,] a person must be taken into custody or otherwise deprived of his freedom of action in any significant way. . . . To determine whether [a defendant's] statements were custodial, we apply an objective standard and determine whether a reasonable person in his situation would have believed he was physically deprived of his freedom of action in a significant way.

(Citations and punctuation omitted.) *State v. Brannan*, 222 Ga. App. 372, 374 (2) (474 SE2d 267) (1996). This objective analysis does not depend "upon the subjective views of either the person being interrogated or the interrogating officer." *Hardin v. State*, 269 Ga. 1, 3 (2) (494 SE2d 647) (1998).

> In determining whether *Miranda* warnings were required in a given situation, it is not relevant that [the] investigators (1) might have focused their suspicions upon the person being questioned, or (2) have already decided that they will take the person into custody and charge them with an offense, so long as that individual is not in custody.

(Footnote omitted.) Id. "*Miranda* warnings are not required simply because questioning takes place in a building containing jail cells." (Citations omitted.) *Hardeman v. State*, 252 Ga. 286, 288 (1) (313 SE2d 95) (1984).

The trial court correctly concluded that Mullins was not in custody at the time he gave the videotaped statement because, although he was a suspect, he was not under arrest or otherwise deprived of his freedom of action. See *Vaughn v. State*, 261 Ga. 686, 687 (2) (410 SE2d 108) (1991) (defendant not in custody even though he was a suspect at the time he was invited to station to make a statement).

4. Mullins argues the trial court erred by giving the State's requested charge on voluntary manslaughter over his objection. According to the defendant, the evidence warranted a finding of either murder or self-defense and nothing in between. We disagree. A charge on voluntary manslaughter should be given "if there is some *slight* evidence of voluntary manslaughter." *Washington v. State*, 249 Ga. 728, 730 (3) (292 SE2d 836) (1982).

The fact that a defendant in a murder trial relies on self-defense will not preclude a charge on the lesser included crime of voluntary manslaughter. When a homicide is neither justifiable nor malicious, it is manslaughter, and if intentional, it is voluntary manslaughter. Evidence of voluntary manslaughter may be found in a situation which arouses [the] sudden passion in the person killing so that, rather than defending himself, he wilfully kills the attacker, albeit without malice aforethought, when it was not necessary for him to do so in order to protect himself. While a belief that the victim was about to reach for a weapon may not result in a finding of justification, the fear of some danger can be sufficient provocation to excite passion.

(Citations and punctuation omitted.) Id. The trial court properly charged on voluntary manslaughter.

5. Mullins asserts he was entitled to a mistrial because the State injected evidence of bad character during direct examination of a State witness. The record shows that when the State asked the decedent's brother the purpose of the trip to Atlanta in which Mullins robbed the decedent, the brother replied, "To buy dope." Defense counsel immediately objected and moved for a mistrial. After the State explained that it thought it would get a different response based on the brother's taped statement, the trial court denied the motion for a mistrial and gave a curative instruction to the jury.

"The denial of a motion for mistrial is a matter largely within the discretion of the trial judge, and unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial, we will not interfere with that discretion." (Footnote omitted.) *Jones v. State*, 251 Ga. App. 285, 286-287 (2) (554 SE2d 238) (2001). As "we have previously held that curative instructions [are] an adequate remedy when witnesses improperly placed the defendant's character into evidence by testifying about his prior convictions or criminal acts," the trial court's curative instruction was an adequate remedy and it did not abuse its discretion when it denied Mullins' motion for a mistrial. (Punctuation and footnote omitted.) Id. at 287 (2) (a).

6. We find no merit in Mullins' contention that the trial court should have given his requested charge on bare suspicion. As three eyewitnesses testified (and Mullins admitted) he was the shooter, the evidence raised more than a bare suspicion of Mullins' guilt. *Hodo v. State*, 272 Ga. 272, 275-276 (6) (528 SE2d 250) (2000).

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 1, 2004.

Duncan, Thomasson, Leonard & Shattuck, Wesley T. Leonard, for appellant.

Peter J. Skandalakis, District Attorney, Lynda S. Caldwell, Matthew T. McNally, Assistant District Attorneys, for appellee.