A05A0814. WINKFIELD v. THE STATE.
(620 SE2d 670)

BERNES, Judge.

A Franklin County jury convicted Ricky Winkfield of rape, kidnapping with bodily injury, and burglary. Winkfield appeals from the denial of his motion for new trial, challenging the sufficiency of the evidence. Finding no error, we affirm.

On appeal, the evidence must be viewed in a light most favorable to the verdict. *Massalene v. State*, 224 Ga. App. 321, 323 (3) (480 SE2d 616) (1997). So viewed, the evidence shows that at the time of the crimes alleged in the indictment, R. K. B., a 74-year-old Alzheimer's victim, lived in an apartment with her 83-year-old brother. In the late

---

afternoon of May 16, 1999, R. K. B.'s brother left the apartment with his niece, L. M., to run an errand. When they returned to the apartment, they observed an African-American male, whom they did not know, run out of the apartment and drive away in a white car with a Hart County license plate. R. K. B.'s brother and L. M. entered the residence and heard R. K. B. cry out in pain. L. M. then went into her uncle's bedroom where she found R. K. B. lying on the bed with her pants off. Blood was visible on the bedspread and the floor. It was obvious to L. M. that her aunt had been raped.

R. K. B. told L. M. that she had been sitting on the porch when the perpetrator entered the residence and called out to her saying, "Lady, I've got something to show you, it's real pretty and I ain't seen nothing like it and I want you to come in here and look to see what I have brought you, it's something real pretty." R. K. B. told her niece that "[w]hen [she] got there he got [her] and dragged [her] in the bedroom and pulled [her] pants off and he hurt [her] here and here and [her] neck." L. M. told her uncle that R. K. B. had been raped and immediately called the police. Police arrived at the scene and in the course of their investigation seized the blood-stained bedding.

R. K. B. was subsequently taken to the hospital where she was operated on to close a tear from the opening of her vagina to her anus. The attending sexual assault nurse testified at trial that R. K. B.'s injuries were consistent with forcible intercourse.

Police developed Winkfield as a suspect the next day when they were called to investigate at a residence where the occupant had been offering an automobile, a blue Lincoln, for sale. They learned that a young African-American male, later identified as Winkfield, had left a white Oldsmobile with a Hart County tag at the residence and driven away with the Lincoln on the pretext of test driving it.[1] Police ran the tag of the Oldsmobile and discovered it had been stolen three days earlier. The next day police discovered the Lincoln at Winkfield's home.

Winkfield was subsequently arrested for theft of the Lincoln and questioned by the police. Winkfield admitted he had been driving the Oldsmobile and had driven away in the Lincoln, but denied stealing the Oldsmobile or perpetrating the crimes against R. K. B. A known sample of Winkfield's DNA was subsequently compared to DNA extracted from seminal fluid and sperm found in a reddish-brown stain on the bedding seized from R. K. B.'s apartment. The State's forensic scientist concluded the DNA extracted from the semen and

---

[1] The vehicle description given by L. M. and R. K. B.'s brother was consistent with an Oldsmobile.

sperm on the bedding could only have come from Winkfield or an identical twin.[2] The stain on the bedding also contained R. K. B.'s DNA.

At trial, Winkfield offered alibi evidence through the testimony of his mother and sisters who testified that Winkfield was at his mother's home on the day of the crimes celebrating Mother's Day.

1. Winkfield contends that there was insufficient evidence of his identity as perpetrator of the offenses. We find Winkfield's claim to be without merit. Evidence at trial showed the assailant to be a young African-American male driving a white automobile with Hart County plates. Winkfield admitted he had been driving a stolen white automobile prior to May 16, the date the crimes occurred, and that he had left the stolen automobile and taken the blue Lincoln the next day. This evidence coupled with the DNA evidence showing both his and R. K. B.'s DNA in stains left on the bedding where the attack occurred was sufficient to enable any rational trier of fact to determine beyond a reasonable doubt that Winkfield was the perpetrator of the crimes of which he was found guilty. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Herring v. State*, 252 Ga. App. 4, 7 (1) (555 SE2d 233) (2001) (circumstantial evidence and matching DNA evidence as sufficient proof of identity). "As for the believability of [Winkfield's] alibi evidence and the credibility of the witnesses, those were matters to be resolved by the . . . factfinder." (Footnote omitted.) *Shepherd v. State*, 245 Ga. App. 386, 387 (1) (537 SE2d 777) (2000). This court addresses only the sufficiency of the evidence, not its weight. *Bradshaw v. State*, 269 Ga. App. 97 (603 SE2d 494) (2004).

2. Winkfield further contends that the evidence was insufficient to show the penetration necessary to sustain a rape charge. OCGA § 16-6-1 (a) provides: "A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will. . . . Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." "The necessary penetration need be only slight and may be proved by indirect or circumstantial evidence." (Punctuation and footnote omitted.) *Lay v. State*, 264 Ga. App. 483, 484 (1) (591 SE2d 427) (2003).

The evidence at trial showed that R. K. B. was found with her pants down lying on the bed with blood on her private parts and the bedding. There were internal tears of the labia, the hymen ring,

---

[2] No evidence was presented at trial regarding the existence of any identical twin. Winkfield's mother testified he was her only son.

second-degree perineum lacerations, and a first-degree vaginal laceration. Each of these injuries was consistent with forcible intercourse. Moreover, evidence admitted at trial without objection established that R. K. B. told an attending nurse her vagina had been penetrated by a penis. The evidence adduced at trial was sufficient to establish penetration beyond a reasonable doubt. See *Lipham v. State*, 257 Ga. 808, 808-809 (1) (a) (364 SE2d 840) (1988).

3. Finally, Winkfield contends that the evidence was insufficient to prove burglary, arguing that the State failed to prove that Winkfield entered R. K. B.'s residence without authority.[3] However, R. K. B. testified at trial that the "[perpetrator] came in the house and I told him [my brother] was going to kill him or make him leave and never come back." Based on this testimony, any rational trier of fact could have found beyond a reasonable doubt that Winkfield entered the victim's home without authority. *Jackson*, 443 U. S. at 307; see also *Clark v. State*, 249 Ga. App. 97, 98 (547 SE2d 734) (2001) ("The testimony of a victim alone, even without corroboration, is sufficient to sustain a rape conviction as well as a burglary conviction.") (footnote omitted).

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 9, 2005.

*Joel N. Shiver*, for appellant.
*Robert W. Lavender, District Attorney*, for appellee.

---

[3] "A person commits the offense of burglary when, without authority and with the intent to commit a felony . . . , he enters or remains within the dwelling house of another." OCGA § 16-7-1 (a).