## A08A0027. WIGHTMAN v. THE STATE.
### (656 SE2d 563)

BLACKBURN, Presiding Judge.

Following a jury trial, Andrew Wightman was convicted on two counts of rape,[1] two counts of statutory rape,[2] two counts of aggravated child molestation,[3] two counts of aggravated sexual battery,[4] and six counts of child molestation.[5] He appeals the guilty verdict on the two counts of rape, arguing that the evidence was insufficient to support those convictions. For the reasons set forth below, we affirm.

"On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and [Wightman] no

---

[1] OCGA § 16-6-1 (a) (1).

[2] OCGA § 16-6-3 (a).

[3] OCGA § 16-6-4 (c).

[4] OCGA § 16-6-22.2 (b).

[5] OCGA § 16-6-4 (a).

longer enjoys a presumption of innocence." (Punctuation omitted.) *Berry v. State.*[6] In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia.*[7]

So viewed, the record shows that on December 30, 2004, 13-year-old Va. H. confided to her best friend and her best friend's mother that over the past couple of years, she had been sexually abused by Andrew Wightman, who was her father's friend and lived with Va. H., her father, her 15-year-old sister (Vi. H.), and Vi. H.'s two-year-old daughter. The next day, her friend's mother took Va. H. to meet with the police and to report Wightman's abuse. Va. H. told the investigator who interviewed her that Wightman had begun sexually abusing her when she was 11 years old by taking her four-wheeling and having her sit on his lap while he got an erection. Va. H. explained that Wightman took photographs of her in the nude and eventually forced her into engaging in sexual intercourse by threatening to distribute the photographs around her school if she did not comply with his demands. Va. H. told the investigator that over the next couple of years, she engaged in sexual intercourse and other sexual acts with Wightman on numerous occasions. She also described a specific instance when she, Wightman, and her older sister, Vi. H., played a game of "truth or dare," during which Wightman exposed his privates. When the police interview was concluded, her friend's mother took Va. H. to a sexual assault crisis center, where she was examined by a sexual assault nurse. In the course of that examination, the nurse found physical evidence that Va. H. had been sexually penetrated numerous times.

While Va. H. was being examined, the investigator went to Va. H.'s home to speak with her father and her sister, Vi. H. The girls' father was at work, but Vi. H., her daughter, and Wightman were at the home. The investigator spoke with Vi. H. and asked her to meet him at the police precinct to discuss the fact that Va. H. had reported being sexually abused. During that interview, Vi. H. confirmed Va. H.'s account of the "truth or dare" game but otherwise denied knowing that Wightman had been sexually abusing Va. H. The investigator also asked Vi. H. if Wightman was the father of her two-year-old daughter, to which Vi. H. responded that he was not.

Shortly after the interview with Vi. H. concluded, the investigator received confirmation from the sexual assault nurse that Va. H.

[6] *Berry v. State*, 274 Ga. App. 831 (1) (619 SE2d 339) (2005).
[7] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

had been sexually abused. Warrants for Wightman's arrest were obtained, but when investigators returned to the girls' home, Wightman was gone. The next day, the investigators received a call from the girls' father informing them that Vi. H. and her daughter were now also missing. Two days later, after receiving a tip from Wightman's stepmother, police found Wightman, Vi. H., and her daughter at the home of Wightman's father in Florida, and Wightman was arrested. Upon her return, Vi. H. was again interviewed by investigators. During this interview, she disclosed that Wightman had been sexually abusing her for over five years and further disclosed that they had engaged in sexual intercourse numerous times. She also admitted that Wightman was the father of her daughter and that she believed he was the father of an earlier child, who died a few days after birth. DNA testing later confirmed the likelihood that Wightman was the father of Vi. H.'s daughter. In addition, Vi. H. revealed that she had undergone at least two abortions in the recent past as a result of Wightman impregnating her.

Wightman was indicted on two counts of rape, two counts of statutory rape, three counts of aggravated child molestation, two counts of aggravated sexual battery, and six counts of child molestation based on his years of sexual abuse of Va. H. and Vi. H. At trial, both Va. H. and Vi. H. recounted the details of the sexual abuse perpetrated by Wightman, including the allegations that he had initially forced them against their will to engage in sexual intercourse with him. Subsequently, Wightman was found guilty on all counts except one count alleging the aggravated child molestation of Va. H. After being appointed new counsel, he filed a motion for new trial, which was denied. This appeal followed.

1. In his first enumeration of error, Wightman contends that the evidence was insufficient to support his conviction of the rape of Va. H. Specifically, he argues that there was no evidence that he had carnal knowledge of Va. H. and that there was no evidence that he engaged in sexual intercourse with her through the use of force. We disagree.

"A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will. . . . Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1 (a) (1). "The necessary penetration need be only slight and may be proved by indirect or circumstantial evidence." (Punctuation omitted.) *Lay v. State.*[8] Additionally, the State must prove that a defendant's acts were conducted "forcibly" and "against [the victim's] will" as two

---

[8] *Lay v. State*, 264 Ga. App. 483, 484 (1) (591 SE2d 427) (2003).

separate elements in rape cases. *State v. Collins*.[9] See OCGA § 16-6-1 (a) (1). "The term 'against her will' means without consent; the term 'forcibly' means acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation." *Collins*, supra, 270 Ga. at 43. "The fact that a victim is under the age of consent may supply the 'against her will' element in a forcible rape case since it shows that the victim is incapable of giving legal consent." Id. Importantly, only minimal evidence of force is required in order to prove rape of a child, and intimidation may substitute for force. *Pollard v. State*.[10] "Further, force may be proved by direct or circumstantial evidence. Lack of resistance, induced by fear, is force, and may be shown by the [victim's] state of mind from her prior experience with [the defendant] and subjective apprehension of danger from him." (Punctuation omitted.) Id. at 543 (3).

Here, Va. H. testified that she and Wightman engaged in sexual intercourse on several occasions. With regard to the first time, she specifically testified that although she was not certain that Wightman's privates went inside her privates, the experience was painful. She further testified that Wightman told her that he "took her virginity." In addition, the sexual assault nurse who examined Va. H. testified that Va. H.'s genitalia bore the signs of repeated penetration. Based on this evidence, the jury was authorized to conclude that Wightman's sex organ had penetrated Va. H.'s sex organ. See *Lay*, supra, 264 Ga. App. at 484 (1) (victim's testimony that it hurt when defendant rubbed his privates on her privates and nurse's testimony that victim suffered injuries consistent with penetration constituted sufficient evidence of carnal knowledge).

With regard to the element of force, Va. H. testified that the first few times she had intercourse with Wightman, she did so only because he threatened and scared her. Specifically, Va. H. testified that Wightman threatened to distribute nude photographs of her throughout her school if she did not comply with his demands. Wightman also threatened to get Va. H. in trouble with her father if she did not comply. Va. H. testified that he further warned her that no one would believe her and that she would be sent to a foster home if she attempted to report the sexual abuse. Given Va. H.'s testimony regarding these threats and acts of intimidation, the jury was authorized to find that Wightman used force. See *Pollard*, supra, 260 Ga. App. at 543 (3); *Roberts v. State*[11] (evidence of intimidation authorized

---

[9] *State v. Collins*, 270 Ga. 42, 42-43 (508 SE2d 390) (1998), superseded by statute on other grounds as stated in *State v. Lyons*, 256 Ga. App. 377, 378-379 (568 SE2d 533) (2002).

[10] *Pollard v. State*, 260 Ga. App. 540, 542-543 (3) (580 SE2d 337) (2003).

[11] *Roberts v. State*, 242 Ga. App. 621, 624 (1) (b) (530 SE2d 535) (2000).

jury to find force); *Skillern v. State*[12] (force established by defendant's threats that victim would get "tooken [sic] away" if she revealed the sexual abuse). Accordingly, the evidence was sufficient to support the jury's conviction of Wightman for the rape of Va. H.

2. Wightman also contends that the evidence was insufficient to support his conviction of the rape of Vi. H., arguing that the State failed to prove that he engaged in sexual intercourse with her through the use of force. We disagree. Vi. H. testified that she and Wightman engaged in sexual intercourse numerous times but that initially it was not consensual. She stated that Wightman would crawl into her bed at night and tell her to be quiet while he had intercourse with her. Vi. H. further testified that subsequent to the first time Wightman forced her into having intercourse she still did not want to have sex with Wightman but that he would threaten her by telling her that no one would believe her if she disclosed his actions and that her family would disown her. Given this testimony, the jury was authorized to find that Wightman used force to engage in sexual intercourse with Vi. H. See *Pollard*, supra, 260 Ga. App. at 543 (3) (defendant's threat that victim would never see her family again if she told of abuse established force); *Skillern*, supra, 240 Ga. App. at 34 (1) (force established by defendant's threats that victim would get "tooken [sic] away" if she revealed the sexual abuse); *Gibbins v. State*[13] (defendant's threats that victim and her mother would be "out on the streets" if she told of abuse constituted force for subsequent acts). Accordingly, the evidence was sufficient to support the jury's conviction of Wightman for the rape of Vi. H.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JANUARY 17, 2008.

*Michael S. Marr*, for appellant.

*Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant District Attorney*, for appellee.

---

[12] *Skillern v. State*, 240 Ga. App. 34 (1) (521 SE2d 844) (1999).
[13] *Gibbins v. State*, 229 Ga. App. 896, 898 (1) (495 SE2d 46) (1997).