**FIRST DIVISION
DOYLE, C. J.,
PHIPPS, P. J., AND MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 3, 2016**

# In the Court of Appeals of Georgia

A15A1807. MAYES v. THE STATE.

MERCIER, Judge.

A jury found Juan Mayes guilty of rape, kidnapping, false imprisonment, and contributing to the delinquency of a minor. Mayes appeals, contending that the evidence presented at trial was insufficient to support the convictions for rape, kidnapping and false imprisonment. We disagree, and affirm.

> Where an appellant challenges the sufficiency of the evidence the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Franklin v. State*, 325 Ga. App. 728, 728-729 (754 SE2d 774) (2014) (citation, punctuation and footnote omitted).

Viewed in the light most favorable to the verdict, the evidence presented at trial included the following. J. B. testified that on December 8, 2004, Mayes approached her and her friend, S. M., and told them he could get them jobs at his car wash. Mayes arranged to pick them up later that evening to discuss employment. J. B. and S. M. were 15 years old.

Mayes picked J. B. and S. M. up at about 7:00 p.m. and drove them to his apartment. While in the car, Mayes gave J. B. a 12-ounce bottle of wine, which she shared with S. M. Inside the apartment, Mayes retrieved an open bottle of an alcoholic beverage from the kitchen and gave it to J. B., directing her to drink it. J. B. took a few sips and, about five minutes later, "everything [was] foggy." J. B. saw the room spinning and she felt as though she could not move. She became confused and could only recall "bits and pieces" of what happened between about 8:00 p.m. and 12:30 a.m.

J. B. testified that she remembered that, around midnight, she and S. M. walked away from the apartment, though her legs felt like "rubber," as if she were paralyzed, and she could barely walk. J. B. tried to withdraw money from a grocery store ATM so they could take a taxi, but she was unable to complete the transaction because she was confused and could not remember her password.

2

Mayes arrived and told J. B. and S. M. to get in his vehicle. They complied at first, but then S. M. got out of the car and J. B. followed her. Mayes grabbed J. B.'s arm and pulled her back in the car. J. B.'s next memory was of being at a Western Union location, where Mayes had her attempt to withdraw money using her ATM card. Mayes then drove J. B. back to his apartment. Still confused, J. B. laid down. J. B. later recalled having seen Mayes standing over her while she was lying down, and remembered saying "no, no" and "'condom' because I knew I couldn't stop it because I felt like I couldn't move." When J. B. awoke at about 8:00 a.m., she was no longer wearing underwear, her tampon had been removed from her vagina, and her vagina was sore. She began walking to a bus stop. Mayes followed her in his car, approached her, and told her he would give her a ride home. J. B. got in the vehicle. Instead of taking J. B. home, however, Mayes drove around, making multiple stops. When J. B. asked Mayes and another passenger if she could get out of the car, they told her she could not. J. B. was afraid. Mayes eventually exited the car, at which time J. B. used his cell phone to call S. M.'s mother and tell her that Mayes was refusing to take her home and would not let her out of the car. When Mayes returned to the car, S. M.'s mother yelled at him on the phone. Mayes became nervous, said something about the police, then drove J. B. to a transit station and allowed her to exit

3

the car. Believing she had been drugged and unsure of what else had happened, J. B. reported the incident to police and went to the hospital, where she underwent medical treatment, including an examination for sexual assault. A physician testified that the examination was consistent with her stated history, but that it did not indicate whether she had or had not been sexually assaulted.

S. M. also testified at trial. She stated that Mayes had given J. B. alcohol from an open bottle at the apartment, and that J. B. had consumed a small amount of that beverage. S. M. noticed that J. B. had become very intoxicated within minutes of consuming the beverage, and was crawling on the floor and speaking unintelligibly. J. B. and Mayes went into a bedroom. Later, S. M. knocked on the bedroom door. In response, Mayes exclaimed, "hold on," and eventually opened the door, sweating. Mayes said he was "almost finished," or words to that effect, then closed and locked the door. A while later, Mayes walked out of the bedroom shirtless, holding up a used condom. S. M. entered the bedroom and found J. B. asleep on the bed, wearing no clothes. S. M. told her to get dressed and helped her up and out of the apartment. The two walked to a store and tried to withdraw money from an ATM. Mayes arrived in a car, and offered to drive the girls home. They got into the car, but Mayes did not take them home. J. B. and S. M. exited the car; J. B. was barely able to walk or speak.

4

Mayes followed J. B. and grabbed her arm, telling her to go with him. S. M. continued walking away by herself, and was picked up by her mother. When S. M. spoke to J. B. by phone later that morning, J. B. still sounded intoxicated.

1. Mayes contends that the evidence was insufficient to support the rape conviction because no witness could definitively testify whether penetration (or any sexual activity) occurred. The evidence was sufficient.

OCGA § 16-6-1 (a) provides:

> (a) A person commits the offense of rape when he has carnal knowledge of: (1) A female forcibly and against her will;
> . . .
>
> Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ.

"The necessary penetration need be only slight and may be proved by indirect or circumstantial evidence." *Winkfield v. State*, 275 Ga. App. 456, 458 (2) (620 SE2d 670) (2005) (citation omitted); *Payne v. State*, 231 Ga. 755 (1) (204 SE2d 128) (1974). Notably, "[e]vidence of a victim's inability to give consent can be used to impute the element of force in certain sexual abuse cases involving a victim who is intoxicated, drugged, or mentally incompetent." *Melton v. State*, 282 Ga. App. 685,

5

691 (2) (c) (639 SE2d 411) (2006) (citation omitted). And, "the same evidence of penile penetration could be used to prove . . . force when the victim was unable to consent due to mental incompetence or severe intoxication." Id. at 692.

"When the jury is authorized to find that the evidence, though circumstantial, excluded every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed unless the verdict is insupportable as a matter of law." *Joyner v. State*, 267 Ga. App. 309, 310 (1) (599 SE2d 286) (2004) (citation omitted).

The circumstantial evidence outlined above (including Mayes's remark from inside the bedroom that he was "almost finished," his display of a used condom upon emerging from the bedroom, and evidence that J. B.'s underwear and tampon had been removed and her vagina was sore) was sufficient for a rational trier of fact to find beyond a reasonable doubt that penetration had occurred; the evidence presented was also sufficient to show lack of consent and force, as required by the rape statute. See generally *Wightman v. State*, 289 Ga. App. 225, 227 (1) (656 SE2d 563) (2008); *Winkfield*, supra at 458-459; *Page v. State*, 271 Ga. App. 541 (610 SE2d 171) (2005); *Demetrios v. State*, 246 Ga. App. 506, 507 (1) (a) (541 SE2d 83) (2000) ("When the victim is physically or mentally unable to give consent to the act, as when she is intoxicated, drugged, or mentally incompetent, the requirement of force is found in

6

the constructive force, that is, in the use of such force as is necessary to effect the penetration made by the defendant."). The enumerated error is without merit.

2. Mayes contends that the evidence was not sufficient to support the kidnapping conviction because the evidence showed that J. B. had entered Mayes's car willingly, that Mayes did not tell J. B. that he would not take her home, and that she did not demand to either get out of the car or to be immediately taken home. The evidence was sufficient.

"A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such person against his or her will." OCGA § 16-5-40 (a).

Here, there was testimony that Mayes grabbed J. B.'s arm when she tried to walk away from his car, pulled her back in the car, and then drove her to his apartment; that she was afraid, confused, and had difficulty walking and speaking. We have held that a jury was authorized to conclude that a person was abducted within the meaning of the kidnapping statute when he had been induced by persuasion, enticement, or fraud to get back in an assailant's car so he could get medical assistance for his injuries, and that he had been held against his will because his injuries had rendered him unable to make a voluntary choice to remain with his

7

abductor. *Wright v. State*, 209 Ga. App. 128, 129 (2) (433 SE2d 99) (1993) (overruled on other grounds in *Mullins v. State*, 270 Ga. 450, 451 (2) (511 SE2d 165) (1999)). Further, even if J. B. had willingly entered the vehicle when Mayes first told her to get in the car, a jury was authorized to find - based on the subsequent events - an abduction and holding sufficient to sustain a kidnapping conviction. See *Wright*, supra; *Winfrey v. State*, 286 Ga. App. 450, 452 (1) (a) (649 SE2d 561) (2007). "[A]ny evidentiary weaknesses, conflicts, or inconsistencies were for the jury to resolve. . . .Where as here, there was sufficient evidence . . . to support each fact necessary to make out the state's case, we must uphold the jury's verdict." *Franklin v. State*, 325 Ga. App. 728, 732 (754 SE2d 774) (2014) (footnote omitted).

3. Mayes challenges the sufficiency of the evidence to support the false imprisonment conviction, asserting that there was no evidence that J. B. had been confined, arrested, or detained against her will. We disagree.

A person commits the offense of false imprisonment when, in violation of the personal liberty of another person, he arrests, confines or detains such person without legal authority. OCGA § 16-5-41 (a).

As detailed above, there was evidence showing that false imprisonment occurred after the kidnapping was accomplished. When J. B. walked away from the

8

apartment in the morning, Mayes approached her in his car and promised to drive her home. Still afraid, "mildly intoxicated," and not knowing where she was or how she would get home, J. B. got into the car. But instead of taking J. B. home as promised, Mayes made multiple stops, during which he stayed in or near the car. When J. B. asked to get out of the car, she was not allowed to do so. Mayes did not allow her to leave until S. M.'s mother threatened to call the police. Accordingly, Mayes's challenge to the sufficiency of the evidence to prove the crime of false imprisonment is without merit. See generally *Scott v. State*, 268 Ga. App. 889, 891 (1) (a) (602 SE2d 893) (2004); *Johnson v. State*, 195 Ga. App. 723, 724 (2), n. 1 (394 SE2d 586) (1990).

*Judgment affirmed. Doyle, C. J., and Phipps, P. J., concur*.