**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 12, 2016**

# In the Court of Appeals of Georgia

A16A0715. THE STATE v. WARREN.

PETERSON, Judge.

The State appeals the trial court's orders granting in part a motion to suppress filed by Charles Albert Warren and denying the State's subsequent motion to reopen evidence in this DUI case. The trial court ruled that the results of a preliminary breath test performed on Warren were inadmissible because the State did not lay the proper foundation for admission of those results. The State argues that its failure to lay the proper foundation for admission of the test results is due to the trial court's error in sustaining an objection to a question of the officer who performed the breath test. Because the State does not proffer the testimony that the officer would have given but for the sustained objection, we affirm the trial court's order granting in part Warren's

suppression motion. The trial court did not abuse its discretion in declining to reopen the evidence to allow the State to ask the objected-to question again.

1. "On appeal from a ruling on a motion to suppress, we construe the evidence most favorably to affirming the trial court's factual findings and judgment." *Brooks v. State*, 285 Ga. App. 624, 626 (647 SE2d 328) (2007). So viewed, on June 20, 2014, a sergeant with the Union County Sheriff's Office observed Warren driving a motorcycle in his direction. The sergeant saw Warren, driving at a high rate of speed, pass a camper in a no-passing zone. The sergeant activated his blue lights and pursued Warren. Warren turned onto a dirt road and parked behind a house, where the sergeant found him sitting on his motorcycle.

The sergeant noticed that, after Warren dismounted from his motorcycle, he was unsteady on his feet, his eyes were bloodshot, his speech was slurred, and he had an odor of alcohol. Warren asked whether he was in North Carolina – the sergeant replied that he was in Georgia – and at one point appeared to be talking to himself. The sergeant asked a deputy who had arrived to administer a preliminary breath test with his handheld device. Warren complied, yielding a result positive for the presence of alcohol. Warren declined the sergeant's request to perform some field sobriety tests, citing a prior injury. The sergeant informed Warren that he was under arrest,

handcuffed him, and placed him in a patrol car. The sergeant read Warren the implied consent notice and requested that he submit to a blood test. Warren declined.

Warren was charged by accusation with DUI less safe, driving with an expired license, speeding, and improper passing. Warren filed several motions seeking exclusion of various evidence, including the results of the preliminary breath test. The trial court held a suppression hearing at which both the sergeant who stopped Warren and the deputy who administered the breath test testified.

To be considered valid for use in a DUI case, a chemical analysis of a defendant's breath

> shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation on a machine which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose. The Division of Forensic Sciences of the Georgia Bureau of Investigation shall approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits, along with requirements for properly operating and maintaining any testing instruments, and to issue certificates certifying that instruments have met those requirements, which certificates and

3

permits shall be subject to termination or revocation at the discretion of the Division of Forensic Sciences.

OCGA § 40-6-392(a)(1)(A).

At the suppression hearing, the State attempted to show that the preliminary breath test satisfied these requirements through the testimony of the deputy who administered the breath test to Warren. After the deputy testified that Warren had performed the test on his handheld Alco-Sensor, the prosecutor began to ask the deputy, "And was that device, the handheld Alco-Sensor, authorized by the Division of Forensic Sciences – " Before the prosecutor could complete her question, defense counsel objected to the question as leading. The trial court sustained the objection. The prosecutor tried to reframe her question, but apparently did not get the answer she was looking for:

Q.    Have you used that device before?

A.    Yes.

Q.    And is it issued to you by your department?

A.    Yes.

Q.    And what approval or certification does that device have?

4

A.    I'm not sure how to answer that question. It was — it was handed out from chain of command for use for those types of tests.

The prosecutor continued on later:

Q.    As a law enforcement officer, who, if anyone, is responsible for establishing protocols for preliminary breath tests, to your knowledge and experience?

A.    Normally it's the investigating officer, the officer that first made contact with the subject.

Q.    Maybe I asked it wrong. As a law enforcement [officer], in your knowledge and experience, who, if anyone, is responsible for authorizing the use of certain devices for preliminary breath tests?

A.    Anyone that actually was given a handheld Alco-Sensor and they know its functions and how to use it. Not everyone in the department has one.

Q.    Right. Do you know who authorizes — in your experience as a law enforcement officer, who, if any[one], authorizes particular devices to be used?

A.    That would be the sheriff.

Q.    Who authorizes the sheriff to use certain devices?

5

A. I would imagine GBI.

No further evidence regarding the permitting or certification of the breath testing device was presented.

At the suppression hearing, defense counsel argued that the breath test results should be excluded for the State's failure to lay a foundation. In response, the State complained that it had tried to a lay a foundation but had been stymied by the defense objection, arguing that the State may ask leading questions when laying the foundation for scientific evidence and reports. The prosecutor added that a foundation would be laid at trial.

The trial court denied most of Warren's motions, but excluded the results of the preliminary breath test. The trial court concluded that the State did not lay a foundation that the device used for the test was approved by the Division of Forensic Sciences of the Georgia Bureau of Investigations for use as a preliminary screening device. "The officer just didn't have it[,]" the trial court said at the hearing. "He didn't have the knowledge." The State filed a motion to reconsider and a motion to reopen the evidence. Both were denied after a hearing.

The State filed an interlocutory appeal. On appeal, the State argues that the objected-to question was not leading because it called for a "yes" or "no" answer. Alternatively, the State argues that even if the question were leading, the deputy should have been permitted to answer because the question was necessary to developing his testimony. The State seeks remand so that it may ask the objected-to question again in order to lay the proper foundation for the admission of the breath test results.

Regardless of whether the question was leading, however, we must affirm. "This court is not an expounder of theoretical law," and it "corrects only such errors as have practically wronged the complaining party." *Hall v. State*, 202 Ga. 619, 620-21 (2) (44 SE2d 234) (1947). A judgment will not be reversed on the basis that the trial court refused to allow a witness to testify "where the record does not show what testimony the witness was expected to give." *Williams v. Ricks*, 152 Ga. App. 555, 558 (2) (263 SE2d 457) (1979). Here, the prosecutor did not tell the trial court what the deputy's answer to the prosecutor's question would have been had he been allowed to answer. Instead, in responding to the defense counsel's argument that the breath test results should be excluded due to the State's failure to lay a foundation, the State merely argued that the officer had testified that he believed the breath testing

7

device "was authorized for the use by the sheriff, by the GBI," complained that the State's attempts to lay a foundation had been frustrated by the defense objection, and represented that any additional steps needed to lay a foundation would be taken at trial. Therefore, the ruling on the defense objection to the question is not a basis for reversal. *See Hall*, 202 Ga. at 620 (2) (no basis for reversal in trial court's refusal to allow defendant to call prosecutor to testify; given that defense counsel "failed even so much as to intimate to the court what he expected to prove by the witness"); *Murphy v. Milo*, 272 Ga. App. 200, 202 (3) (612 SE2d 56) (2005) (affirming civil verdict despite appellant's argument that his attorney was not permitted to ask him leading questions, as appellant "fail[ed] to cite a proffer of any evidence that the court's instruction precluded him from presenting to the jury" or "even argue how the exclusion of the unidentified evidence harmed him"); *Williams*, 152 Ga. App. at 558 (2) (rejecting appeal based on trial court's refusal to allow a particular question of a witness; appellants abandoned line of questioning and attorney did not "make an offer as to what he thought the witness' answer might be").

Without knowing how the deputy might have answered the prosecutor's question, we do not know whether the State was harmed by any erroneous ruling on the defense objection. We cannot assume the answer to the prosecutor's question

8

would have been "yes," and, indeed, the State merely requests that it be given a new chance to ask it on remand. And testimony by the deputy strongly suggests that he did not know the answer to the question: When he finally thought of the GBI as a potential suspect in the prosecutor's quest for an answer as to who authorized the preliminary screening device, he merely said he "would imagine" that agency was responsible. Because the State did not offer a contrary proffer as to how the deputy might have answered the objected-to question, we affirm the trial court's ruling on the suppression motion.

2. The State also included in its Notice of Appeal a challenge to the trial court's denial of its motion to reopen the evidence.

> Whether to reopen the evidence is a matter which rests within the sound discretion of the trial court. A trial court's ruling in this regard will not be reversed in the absence of an abuse of discretion. Whether there has been a reversible abuse of discretion requires a consideration of the totality of the circumstances.

*Carruth v. State*, 267 Ga. 221, 221-22 (476 SE2d 739) (1996) (citations omitted). Here, the trial court ruled that it would not reopen the evidence because the suppression hearing "was the day to get [the foundational evidence] in" and, if the court were to grant the motion, it "would be inviting everyone to ask to open evidence

9

every time [the court] ruled against them." The State has not challenged this reasoning on appeal, or even argued specifically in its brief that the trial court erred in denying the motion to reopen evidence. The State on appeal merely asks that it be given a new opportunity to ask the objected-to question because it was improperly deemed a leading question. We cannot say the trial court abused its discretion in denying the State's request to reopen the evidence.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur*.