**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 16, 2025**

# In the Court of Appeals of Georgia

A25A1500. VICK v. THE STATE.

BARNES, Presiding Judge.

A jury found Wesley Price Vick, Jr. guilty of rape, aggravated child molestation, and child molestation. On appeal from the denial of his motion for new trial, Vick contends that the evidence was insufficient to support his convictions. He further argues that the trial court erred in restricting defense counsel's cross-examination of the victim and her mother, excluding opinion testimony from a defense expert as to whether the victim's physical injuries were consistent with sexual abuse, and excluding the admission of good character evidence regarding his appropriateness around children. Lastly, Vick maintains that his trial counsel rendered constitutionally ineffective assistance in certain respects. For the reasons discussed below, we affirm.

Construed in favor of the verdict,[1] the evidence showed that during the time period in question, the female victim was thirteen years old. Vick previously dated the victim's mother. After their romantic relationship ended, the mother remained friends with Vick, and she confided in him that the victim's biological father did not play a large role in the victim's life and that his absence was affecting her. The mother introduced the victim to Vick, and the three of them began spending time together.

On July 19, 2019, Vick texted the victim's mother and offered to take the victim to a café and museum the next day while the mother was at work and then bring her back home. The mother agreed to the outing. The following day, Vick picked up the victim and took her to lunch and then to a local history museum. After visiting the museum, Vick drove the victim back to his house in Columbia County rather than drop the victim off at her house, and he texted the victim's mother about the change in plans. The mother agreed to pick up the victim from Vick's house after she got off of work.

Vick and the victim were alone in his house, and they sat on the couch in the living room and started watching a movie. While on the couch, Vick began rubbing the

---

[1] See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

victim's back and legs and pulled the victim on top of him. Vick moved his hand under the victim's shirt and touched her breasts. Afraid and uncomfortable, the victim tried to push Vick's hands away, but he did not stop. Vick then took the victim by the hand and led her to his bedroom. Once on the bed, Vick removed both of their shorts and underwear and held the victim's arms down as he forced his penis into her vagina. The victim was scared and unsuccessfully attempted to push Vick away. Vick repeatedly told her, "This is only between us."

When the victim's mother got off of work that afternoon, she picked up the victim from Vick's house. The victim initially did not tell her mother what had transpired because she was worried that her mother would "look at [her] . . . differently." Later that day, Vick picked up the victim from her house and took her to a baseball game. Vick again told the victim that "this is just between us" and grabbed her hand. After the game, Vick stopped by his house before driving the victim home. As the victim sat on the couch, Vick forced himself on top of her and began "groping" her. The victim "shut down," and Vick eventually stopped and drove her home.

Once Vick dropped the victim off at her house, the victim called her sister, described what happened that day, and disclosed that Vick raped her. With encouragement from her sister, the victim told her mother. Law enforcement was contacted, and a responding officer obtained a written statement from the victim.

After providing the statement, the victim was transported by ambulance to the hospital, where a sexual assault examination was conducted. When her patient history was taken as part of the examination, the victim said that Vick had forced her to have sexual intercourse with him. The victim was in so much vaginal pain that the sexual assault nurse had difficulty performing the exam, and the victim had to be given pain medication and nitrous oxide gas to calm her down. Although the nurse was unable to perform an interior examination with a speculum to look for injuries, she performed an exterior examination and identified a vaginal tear and a vaginal abrasion. The nurse was able to obtain some vaginal swabs from the victim, but later testing did not detect any male DNA on the swabs.

A few days after the sexual assault examination, the victim underwent a forensic interview where she again disclosed what had occurred and described how Vick had

touched her and forced her to have sexual intercourse with him. A police investigator interviewed Vick, who denied the sexual assault and rape allegations.

Vick was indicted on charges of rape, aggravated child molestation (predicated on the victim's allegation that Vick had sexual intercourse with her, causing her physical injury), and child molestation (predicated on the victim's allegation that Vick touched her breast). At the ensuing jury trial, the victim testified about the incidents with Vick and stated that she did not want to have sex with him and that the sexual assault caused her vaginal pain. The State also introduced into evidence the victim's recorded forensic interview and played it for the jury, and the victim's mother and sister testified about the victim's disclosures to them. Among other witnesses called by the State, the emergency room physician who was present for the sexual assault examination testified that the location and particular type of injury to the victim's vagina were consistent with vaginal penetration and were most often associated with sexual assault.

Vick elected not to testify. The defense presented five witnesses — four characters witness and a nurse practitioner with expertise in sexual assault examinations. The nurse practitioner testified that the documentation and description

of the victim's vaginal tear in the medical records lacked any information about the location and size of the tear and did not comply with best practices.

The jury returned a verdict of guilty on all counts. Vick filed a motion for new trial, as amended, in which he raised several claims of error, including that his trial counsel provided constitutionally ineffective assistance by failing to object to testimony about the impact of the sexual abuse on the victim and the reason why the victim's mother was crying on the witness stand. After a hearing at which Vick's trial counsel testified, the trial court entered its order denying the motion for new trial, resulting in this appeal.

1. Vick contends that the evidence was legally insufficient to support his convictions for rape and child molestation.[2]

> When evaluating a challenge to the sufficiency of the evidence as a matter of federal constitutional due process under *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 S Ct 2781, 61 LE2d 560) (1979), we view the evidence presented at trial in the light most favorable to the verdicts and

---

[2] Because the trial court merged the aggravated child molestation count into the rape count, Vick was not sentenced on the former count. His challenge to the sufficiency of the evidence on the aggravated child molestation count therefore is moot. See *Eggleston v. State*, 309 Ga. 888, 890-891 (848 SE2d 853) (2020).

ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes for which he was convicted.

*Copeland v. State*, 314 Ga. 44, 47 (2) (875 SE2d 636) (2022). "We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts, and we do not reweigh the evidence." (Citations and punctuation omitted.) *Harris v. State*, 313 Ga. 225, 229 (2) (869 SE2d 461) (2022).

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to enable a rational jury to find Vick guilty beyond a reasonable doubt of rape and child molestation. See OCGA §§ 16-6-1 (a) (1); 16-6-4 (a) (1); *Jackson*, 443 U. S. at 319 (III) (B). The testimony of the victim about the sexual abuse — as well as her prior out-of-court-statements made in her forensic interview played for the jury and made to her mother, sister, and other witnesses who testified at trial — were sufficient to support the convictions. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Rider v. State*, 366 Ga. App. 260, 264-265 (1) (883 SE2d 374) (2022) (explaining that the jury could consider the child victims's prior out-of-court statements made to a

forensic interviewer and another third party as substantive evidence of the defendant's guilt under the child hearsay statute, OCGA § 24-8-820); *Torres v. State*, 353 Ga. App. 470, 476 (1) (838 SE2d 137) (2020) (noting that the victim's testimony regarding the sexual abuse, standing alone, was sufficient to support convictions). And while Vick maintains that there were inconsistencies in the victim's testimony and her prior statements about the sexual abuse, "it is for a jury, not this Court, to assess the weight and credibility of the evidence" and resolve any conflicts in the testimony. *Tinson v. State*, 337 Ga. App. 83, 85 (1) (785 SE2d 914) (2016). See *Harris*, 313 Ga. at 229 (2).

Vick also points out that there was no DNA evidence linking him to the crimes, "[b]ut Georgia law does not require corroboration of a sexual crime victim's testimony." *Tinson*, 337 Ga. App. at 85 (1) (rejecting argument that evidence was insufficient to support convictions for rape and other sexual offenses due to lack of DNA evidence); *Scales v. State*, 171 Ga. App. 924, 924-925 (2) (321 SE2d 764) (1984) (noting that no corroboration is required for a child molestation conviction). In any event, although unnecessary to support Vick's convictions, the victim's testimony and prior statements about the sexual abuse were corroborated by the medical evidence that she had a vaginal tear consistent with vaginal penetration and sexual assault. See

8

*Tinson*, 337 Ga. App. at 85 (1) (pointing out that while corroboration was not required, the victim's testimony that she was sexually abused by the defendant was corroborated "by the medical evidence that [her] genital area appeared abnormal in ways consistent with her account"). Contrary to Vick's contentions on appeal, the evidence was sufficient to support his convictions.

2. Vick argues that the trial court erred by restricting him from cross-examining the victim about an allegedly false statement that she made under oath in a prior custody proceeding between her mother and father. According to Vick, in the prior proceeding the victim gave a false sworn statement that her mother assaulted her and kicked her out of the house in May 2021 and that her mother had a boyfriend who had lived with them for three years. Vick asserts that he was entitled to cross-examine the victim about her sworn statement because it was specific conduct that was probative of her character for untruthfulness and thus was admissible under OCGA § 24-6-608 (b) (1) ("Rule 608").[3]

---

[3] Rule 608 (b) (1) provides:
> (b) Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime as provided in Code Section 24-6-609, or conduct indicative of the witness's bias toward a party may not be proved by extrinsic evidence. Such instances may however, in the discretion of

Under Rule 608 (b) (1), "a trial court may allow questioning about specific instances of conduct by a witness on cross-examination, if the conduct is probative of the witness's character for truthfulness or untruthfulness." *Central Ga. Women's Health Center v. Dean*, 342 Ga. App. 127, 139-140 (2) (800 SE2d 594) (2017). But "attacking a witness's character for truthfulness may not be done through the use of extrinsic evidence." *Page v. State*, 372 Ga. App. 128, 131 (1) (903 SE2d 815) (2024).[4] Thus, if the witness denies the specific conduct, the questioning party must take the witness's answer and cannot use extrinsic evidence to prove that the conduct occurred. See id. at 131-132 (1); *United States v. Matthews*, 168 F3d 1234, 1244 (II) (11th Cir. 1999). A trial court's evidentiary ruling under Rule 608 (b) (1) is reviewed only for an abuse of discretion. *Douglas v. State*, 340 Ga. App. 168, 172 (2) (796 SE2d 893) (2017).

the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness: (1) Concerning the witness's character for truthfulness or untruthfulness[.]

[4] There are exceptions to the rule against introducing extrinsic evidence for prior criminal convictions admissible under OCGA § 24-6-609 and for conduct reflecting bias against a party. See Rule 608 (b), quoted supra in footnote 3. Vick does not allege that either of those exceptions applies in this case; rather, his argument is that he should have been permitted to cross-examine the victim about her prior sworn statement.

We need not resolve whether the trial court abused its discretion in preventing cross-examination of the victim about her prior sworn statement under Rule 608 (b) (1) because "harm as well as error must be shown for reversal." (Citation and punctuation omitted.) *Tedder v. State*, 320 Ga. 29, 39 (3) (b) (907 SE2d 623) (2024). As previously noted, Vick does not argue that he was entitled to introduce extrinsic evidence to prove that the victim gave a prior false sworn statement; thus, evidence of the alleged false statement would be presented to the jury only through the testimony of the victim on cross-examination. Notably, however, defense counsel did not cross-examine the victim about her prior sworn statement outside the presence of the jury or otherwise make a proffer of how the victim would answer questions posed to her about the statement.

> [T]o establish reversible error, a party seeking review of a trial court's ruling excluding testimony must show how the testimony would have benefitted her case. Thus, even if a trial court errs by imposing unwarranted limits on the trial of a case, there is no reversible error unless the appellant can show harm resulting from the court's action. To make this showing, a party must proffer the excluded testimony to the trial court. Absent such a proffer, we have no basis in the record to disturb the trial court's ruling.

11

(Citations and punctuation omitted.) *Skelton v. Skelton*, 365 Ga. App. 53, 55 (1) (876 SE2d 715) (2022). See *Doe v. State*, 354 Ga. App. 393, 396 (1), n. 4 (841 SE2d 32) (2020) ("A judgment will not be reversed on the basis that the trial court refused to allow a witness to testify where the record does not show what testimony the witness was expected to give.") (citation and punctuation omitted).

Given that there was no proffer of the victim's testimony, we are left to speculate as to how the victim would have responded to questioning about her prior sworn statement. Vick therefore cannot show that the victim's testimony would have benefitted him or that he was harmed by the exclusion of the testimony. His enumeration of error thus provides no basis for reversal. See *Gilmer v. State*, 339 Ga. App. 593, 599-600 (2) (c) (794 SE2d 653) (2016) (holding, in the context of an ineffective assistance of counsel claim, that even if the State's witness could have been cross-examined about her prior arrest for perjury under Rule 608 (b) (1), the defendant failed to show prejudice where there was no evidence in the record as to what the witness's testimony would have been regarding the arrest); *State v. Warren*, 338 Ga. App. 849, 852 (1) (792 SE2d 116) (2016) (concluding that the State failed to show that the trial court committed reversible error by sustaining an objection to a

12

question that the prosecutor posed to a deputy, where the "prosecutor did not tell the trial court what the deputy's answer to the prosecutor's question would have been had he been allowed to answer"); *Patrick v. State*, 247 Ga. App. 495, 497 (544 SE2d 194) (2001) ("A proffer is inadequate unless it informs the trial court, at the time the questions were propounded, what answers were expected. If the record does not show what testimony the witness was expected to give, the judgment will not be reversed.") (footnotes omitted).[5]

3. Vick contends that the trial court erred by preventing him from cross-examining the victim's mother about her alcohol consumption. "Like most questions about the admissibility of evidence, the scope of cross-examination is committed in the

---

[5] Citing to the Sixth Amendment to the United States Constitution and Article I, Section I, Paragraph XIV of the Georgia Constitution, Vick asserts in a footnote in his brief that if his trial counsel made an inadequate proffer, the trial court should have found that his counsel was constitutionally ineffective. But "[a]n assertion of error followed by a [legal] citation is not legal argument, which requires, at a minimum, a discussion of the appropriate law as applied to the relevant facts." (Citation and punctuation omitted.) *MacMillan v. State*, 372 Ga. App. 796, 801 (1), n. 15 (906 SE2d 876) (2024). As we have repeatedly emphasized, "mere conclusory statements are not the type of meaningful argument contemplated by our rules." (Citation and punctuation omitted.) Id. at 801 (1). Consequently, Vick has abandoned any argument that the trial court should have determined that his trial counsel was ineffective in failing to make a sufficient proffer. See Court of Appeals Rule 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

first instance to the sound discretion of the trial court, and we review a limitation of cross-examination only for an abuse of that discretion." (Citation and punctuation omitted.) *Watkins v. State*, 361 Ga. App. 55, 58 (3) (862 SE2d 720) (2021).

During cross-examination, defense counsel asked the victim's mother if she told Vick that she was having "some issues" with "drinking a little too much." The State objected on relevancy grounds. Outside the presence of the jury, defense counsel asked the mother if before the incident in this case she sometimes drank to excess, and she responded that she did. Defense counsel then asked the mother if she drank on the night of the victim's disclosure of the sexual abuse, and the mother responded in the affirmative. Upon further questioning, the mother stated that she had one mixed drink that night before the victim disclosed the sexual abuse to her. Following the proffered testimony of the mother, the trial court sustained the State's objection.

In light of the proffered testimony, the trial court acted within its discretion in excluding cross-examination of the mother about her alcohol consumption. One method of attacking the credibility of a witness is to show "that the witness's capacity to perceive, recall, or relate the relevant event [was] impaired." *Belcher v. State*, 344 Ga. App. 729, 734 (2) (812 SE2d 51) (2018). And because admissibility of evidence

regarding a witness's diminished capacity is not specifically addressed by the Evidence Code, admissibility of such evidence "is limited only by the relevance standard of OCGA § 24-4-402" ("Rule 402").[6] (Citation and punctuation omitted.) Id. Under Rule 402, "relevant evidence is admissible, unless a specific exception applies, and irrelevant evidence is inadmissible." *Gallegos-Munoz v. State*, 319 Ga. 803, 816 (2) (e) (906 SE2d 711) (2024). "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Wilson v. State*, 315 Ga. 728, 738 (8) (883 SE2d 802) (2023), quoting OCGA § 24-4-401 ("Rule 401").[7]

A witness's use of alcohol or drugs is relevant if the consumption impaired the witness's memory or perception of events at issue in the case. See *United States v.*

---

[6] Rule 402 provides:
>All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. Evidence which is not relevant shall not be admissible.

[7] Because Rule 401 is materially identical to Federal Rule of Evidence 401, we look to the decisions of federal appellate courts for guidance rather than cases decided under the old Georgia Evidence Code. See *Martinez-Arias v. State*, 313 Ga. 276, 286 (3), n. 8 (869 SE2d 501) (2022).

*Spano*, 421 F3d 599, 606 (7th Cir. 2005) (explaining that witness could have been impeached with evidence of his alcohol or marijuana use, "if there were any reason to think that alcohol or marijuana had seriously impaired his memory or had prevented him from understanding the events about which he testified when they took place"); *United States v. DiPaolo*, 804 F2d 225, 229 (A) (2d Cir. 1986) ("It is, of course, within the proper scope of cross-examination to determine whether a witness was under the influence of drugs or narcotics or alcohol at the time of observation of events in dispute[.]"); *Casares v. Bernal*, 790 FSupp.2d 769, 785-786 (II) (C) (N.D. Ill. 2011) ("Where there is reason to believe that alcohol or marijuana had seriously impaired a witness's memory of the events to which he is testifying or prevented him from understanding the events at the time they occurred, evidence of his drug or alcohol use is admissible."); *United States v. Lujan*, 530 FSupp.2d 1224, 1260 (II) (H) (2) (b) (D. N.M. 2008) ("Use of alcohol or drugs during the time the witness perceived events . . . may constitute impeachment evidence, if the use impaired the witness's memory and perception of the event.").

Here, however, there was no indication from the mother's proffered testimony that her drinking of one alcoholic beverage impaired her memory or perception of

16

what the victim told her about the sexual abuse. Indeed, defense counsel did not ask the mother if the one drink affected her in any way. Nor did counsel proffer any other evidence reflecting that the mother was intoxicated or that her memory was impaired by alcohol on the night of the victim's disclosure. And while the mother admitted that she sometimes drank to excess, evidence of "a general habit of intemperance tells us nothing of the witness's testimonial incapacity unless it involves actual intoxication at the time of the event observed or at the time of testifying." (Citations, punctuation, and emphasis omitted.) *DiPaolo*, 804 F2d at 230 (A). See *Lujan*, 530 FSupp2d at 1260 (II) (H) (2) (b) (explaining that "[a] general habit of intemperance, . . . is not admissible unless it involves actual intoxication at the time of the event observed or at the time of testifying"). Given the record in this case, the trial court did not abuse its discretion in precluding cross-examination about the mother's alcohol consumption. See *Mondragon v. State*, 304 Ga. 843, 845-846 (3) (823 SE2d 276) (2019) (concluding that trial court did not err in excluding toxicology report reflecting the victim's blood-alcohol content, where there was no evidence of the impact of the alcohol consumption on the victim's behavior).

4. During its case-in-chief, the defense called as a witness a nurse practitioner who had training and experience as a sexual assault nurse examiner. The trial court ruled that the nurse practitioner was qualified to render an expert opinion only as to the appropriate protocols and standards for conducting sexual assault nursing examinations. On appeal, Vick contends that the trial court abused its discretion by preventing the nurse practitioner "from testifying as to whether it was her opinion that the victim's injuries were consistent or inconsistent with sexual assault" because offering such an opinion was within her field of expertise.

Even if we assume that the trial court erred in prohibiting the nurse practitioner from testifying about the consistency or inconsistency of the victim's injuries with sexual assault, Vick cannot show harm resulting from the exclusion. While making a proffer in response to the State's objection, defense counsel asked the nurse practitioner if based on a sexual assault examination, she could opine as to whether an injury "might be consistent with something or inconsistent," and the nurse practitioner responded that she could render such an opinion. But defense counsel did not then go on to ask the nurse practitioner to render her expert opinion on that question in this case; in other words, defense counsel never asked the nurse

practitioner for her opinion as to whether the victim's vaginal tear and abrasion recorded in her sexual assault examination were consistent or inconsistent with sexual abuse. Absent such a proffer, we are left to speculate as to how the nurse practitioner would have responded to such a question or whether her response would have benefitted the defense. Therefore, Vick has shown no basis for reversal. See supra Division 2 and cases cited therein. See also *Thaxton v. State*, 260 Ga. 141, 145 (7) (390 SE2d 841) (1990) (holding that exclusion of physician's expert opinion testimony was harmless, absent a proffer of the testimony); *Landry v. Walsh*, 342 Ga. App. 283, 286 (1) (801 SE2d 553) (2017) (concluding that appellant failed to show prejudice resulting from trial court's exclusion of expert opinion testimony, where the appellant never made a proffer of the proposed testimony).

5. In its case-in-chief, the defense called one of Vick's longtime friends as a character witness. The friend testified that she had three children and had been close with Vick since her first child was born. Defense counsel asked the friend if over the course of their friendship, she "had an opportunity to observe or make an opinion about [Vick's] reputation for appropriateness around children?" The State objected on the ground that the question sought to elicit improper character evidence, and the

trial court sustained the objection. On appeal, Vick argues that the trial court erred in excluding his longtime friend's testimony regarding his reputation for appropriateness around children. Pretermitting whether the trial court erred, we conclude that any such error was harmless in light of the testimony of Vick's character witnesses that was admitted without objection.

During her testimony, the longtime friend also was asked about her opinion regarding Vick's general character, and she responded, "[Vick] is a savior. He's the person that you go to when you need to be saved from something. [Vick's] the guy that you call when you — anything you need. [Vick's] coming, whether it be anything." She further testified, that Vick "[has] great character. He's a great man. He's an upstanding man." Moreover, Vick's longtime friend was one of four defense character witnesses. Another character witness testified, without objection, that he had "always seen [Vick] be very appropriate around children" and had no concerns, and that Vick had "always been an integrity driven and truthful person[.]" Two other character witnesses testified that in their opinion Vick was of good character.

As reflected by this record, although the trial court prevented Vick's longtime friend from testifying to Vick's reputation for appropriateness around children,

another character witness was able to testify to Vick's reputation in that regard without objection, and the defense was able to elicit testimony regarding Vick's good character from several witnesses, including from his longtime friend. Under these circumstances, any error in excluding the longtime friend's testimony was harmless and provides no basis for reversal. See *Pack v. State*, 335 Ga. App. 783, 785 (2) (783 SE2d 146) (2016) (concluding that any error in excluding character witness testimony that the defendant was "sexually appropriate and moral toward children" was harmless, where the trial court permitted the defendant to present several character witnesses who opined about his "general reputation as a truthful, moral person").

6. Vick argues that he received constitutionally ineffective assistance from his trial counsel. To succeed on a claim of ineffective assistance of counsel under the test set forth in *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 S Ct 2052, 80 LE2d 674) (1984),

> a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. To satisfy the deficiency prong, a defendant must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. This requires a defendant to overcome the

strong presumption that trial counsel's performance was adequate. To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.

(Citations and punctuation omitted.) *Smith v. State*, 308 Ga. 81, 87 (3) (839 SE2d 630) (2020). In conducting our appellate review, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012). Mindful of these principles, we turn to Vick's specific ineffective assistance claims.

(a) Vick contends that his trial counsel was ineffective by failing to object to witness testimony that the victim was in severe vaginal pain during her sexual assault examination. According to Vick, testimony regarding the vaginal pain experienced by the victim constituted impermissible victim impact testimony that should have been excluded from the guilt/innocence phase of his trial.

Under Georgia law, evidence about a crime victim's personal characteristics and the emotional impact of the crime on the victim, the victim's family, and the victim's community generally is not admissible in the guilt/innocence phase of a criminal trial. . . . [B]ackground information about the victim that is not relevant to the issues in the guilt/innocence phase, particularly the sort of background information likely to engender the jury's sympathies, should not be presented to the jury during that phase.

(Citations, punctuation, and footnote omitted.) *Owens v. State*, 374 Ga. App. 56, 65-66 (2) (b) (i) (911 SE2d 330) (2025). See OCGA § 17-10-1.2 (a) (3) (permitting victim impact evidence in the sentencing phase);[8] *Lofton v. State*, 309 Ga. 349, 363-364 (6) (b) (ii) (846 SE2d 57) (2020) (discussing victim impact evidence).

Testimony regarding the victim's vaginal pain, however, was not impermissible victim impact testimony in light of the rape and aggravated child molestation charges

---

[8] OCGA § 17-10-1.2 (a) (3) provides in part:

In all cases other than those in which the death penalty may be imposed, prior to fixing of the sentence as provided for in Code Section 17-10-1 or the imposing of life imprisonment as mandated by law, and before rendering the appropriate sentence, including any order of restitution, the court shall allow the victim, as such term is defined in Code Section 17-17-3, the family of the victim, or such other witness having personal knowledge of the crime to testify about the impact of the crime on the victim, the family of the victim, or the community. . . .

that the State sought to prove at trial. Proof that Vick penetrated the victim's "female sex organ" with his "male sex organ" and did so "forcibly" were necessary elements of the rape count of the indictment, see OCGA § 16-6-1 (a);[9] *Wightman v. State*, 289 Ga. App. 225, 227-228 (1) (656 SE2d 563) (2008), and proof that the victim was physically injured was a necessary element of the aggravated child molestation count. See OCGA § 16-6-4 (c);[10] *Moon v. State*, 335 Ga. App. 642, 646 (1) (b) (782 SE2d 699) (2016). And the State could prove these elements through evidence that the victim experienced vaginal pain and soreness caused by the alleged sexual abuse. See *Daddario v. State*, 307 Ga. 179, 186-187 (2) (a) (835 SE2d 181) (2019) (explaining that

---

[9] "A person commits the offense of rape when he has carnal knowledge of[ ] . . . [a] female forcibly and against her will." OCGA § 16-6-1 (a) (1) (2019). "Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1 (a) (2019). "The fact that a victim is under the age of consent may supply the 'against her will' element in a forcible rape case since it shows that the victim is incapable of giving legal consent." (Citation and punctuation omitted.) *Wightman v. State*, 289 Ga. App. 225, 228 (1) (656 SE2d 563) (2008).

[10] "A person commits the offense of child molestation when such person[ ] . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1) (2019). "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child[.]" OCGA § 16-6-4 (c) (2019).

evidence that a victim suffered pain and physical trauma proximately caused by the alleged molestation is sufficient to prove physical injury for purposes of aggravated child molestation); *Lee v. State*, 197 Ga. 123, 123 (1) (28 SE2d 465) (1943) (concluding that there was sufficient evidence of penetration to establish rape, where there was evidence that the victim experienced interior vaginal injury, soreness, and pain); *Massey v. State*, 346 Ga. App. 233, 235 (1) (816 SE2d 100) (2018) (determining that the evidence was sufficient to establish the physical injury element of aggravated child molestation, where, among other things, the nurse who examined the victim testified that the victim told her that it hurt when the defendant touched her private area and that it sometimes burned when she urinated after the touching); *Mayes v. State*, 336 Ga. App. 55, 56, 58 (1) (783 SE2d 659) (2016) (concluding that there was sufficient evidence of penetration and force in rape case, where the victim complained of vaginal soreness); *Mangham v. State*, 291 Ga. App. 696, 696-697 (662 SE2d 789) (2008) (determining that evidence was sufficient to establish the element of physical injury for aggravated child molestation count, where the victim described the molestation as painful and "testified that her vaginal area hurt throughout the next day"). Accord *Hartman v. State*, 358 Ga. App. 663, 664 (1), 666 (1) (856 SE2d 39) (2021) (in case

where the defendant challenged the sufficiency of the evidence to support his aggravated sodomy conviction, explaining that evidence of pain and bleeding after the alleged incident was sufficient to prove force in the sexual assault context). In light of this precedent, the trial court would have been authorized to find that testimony regarding the vaginal pain and soreness that the victim continued to experience after her sexual intercourse with Vick was relevant and material to prove necessary elements of the rape and aggravated child molestation counts and was not unfairly prejudicial. See id. Any objection to such testimony by trial counsel thus would have been without merit, and failure to raise a meritless objection does not constitute ineffective assistance. See *Anthony v. State*, 282 Ga. App. 457, 459 (2) (638 SE2d 877) (2006) (concluding that failure to object to alleged victim impact testimony did not constitute ineffective assistance, where the objection would have been meritless). Vick therefore cannot succeed on this ineffective assistance claim.

(b) On direct examination, the State asked the victim's mother why she was "tearing up" on the witness stand after reading out loud to the jury a text message between her and Vick, and the mother answered, "It's just hard reading that because I trusted him." Vick argues that his trial counsel was ineffective in failing to object to

the mother's testimony about the reason for her emotional state because it was irrelevant and unfairly prejudicial.

We conclude that trial counsel's decision not to object to the testimony was a matter of reasonable trial strategy and did not constitute deficient performance. At the hearing on the motion for new trial, Vick's trial counsel explained that she did not object to the mother's testimony about the reason for her emotional state because counsel did not want to highlight the testimony for the jury and thought that an objection "would actually draw more attention to the statement." "The matter of when and how to raise objections is generally a matter of trial strategy." *Gibson v. State*, 272 Ga. 801, 804 (4) (537 SE2d 72) (2000). "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *Lowery v. State*, 347 Ga. App. 26, 39 (4) (815 SE2d 625) (2018). We cannot say that trial counsel's strategic decision not to object to the mother's testimony so as not to highlight it to the jury was patently unreasonable. See *Mann v. State*, 297 Ga. 107, 111 (4) (b) (772 SE2d 665) (2015) (trial counsel's decision not to object because "she did

not want to highlight the testimony" was not patently unreasonable); *Lowery*, 347 Ga. App. at 39 (4) (concluding that "trial counsel's strategic decision not to object to the testimony in order not to highlight it for the jury" was not patently unreasonable). Vick thus failed to establish his ineffective assistance claim on the asserted ground.

7. Lastly, we address cumulative error. In our analysis, we have assumed three evidentiary errors by the trial court but determined that there was no showing of harm as to each of them. See supra Divisions 2, 4-5. To obtain a new trial based on cumulative error, "an appellant must show that (1) at least two errors were committed in the course of the trial; and (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the appellant a fundamentally fair trial." (Citation and punctuation omitted.) *Redding v. State*, 320 Ga. 107, 119 (4) (907 SE2d 258) (2024). Here, Vick does not present any argument regarding application of the cumulative error rule to the trial court's evidentiary rulings, but "[a] defendant who wishes to take advantage of the cumulative error rule should explain to the reviewing court just how he was prejudiced by the cumulative effect of multiple errors." (Citation and punctuation omitted.) *Young v. State*, 317 Ga. 57, 66 (4) (891 SE2d 827) (2023). Nevertheless, considering the record as a whole, the

harmlessness of any individual errors, and Vick's failure to make sufficient proffers of expected testimony, "we conclude that the presumed errors at issue here did not so infect the jury's deliberation that combined they denied [Vick] a fundamentally fair trial." (Citation and punctuation omitted.) *Redding*, 320 Ga. at 119 (4).

*Judgment affirmed. Brown, C. J., and Watkins, J., concur.*